IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>PITTSBURGH CORNING CORPORATION,<br><br>Debtor. | In Proceedings for a<br>Reorganization under<br>Chapter 11<br><br>Case No. 00-22876 JKF |
| PITTSBURGH CORNING CORPORATION,<br><br>Movant,<br><br>v.<br><br>PNC BANK, NATIONAL ASSOCIATION,<br><br>Respondent. | Document No.<br><br>Hearing Date & Time:<br>July 23, 2010 at 1:00 pm<br><br>Response Date: July 6, 2010 |

**MOTION FOR AUTHORITY TO ENTER INTO THE SEVENTH
AMENDMENT OF DEBTOR IN POSSESSION CREDIT AGREEMENT**

The debtor, Pittsburgh Corning Corporation (the "Debtor"), hereby requests, pursuant to Bankruptcy Code §§ 105(a), 363, 364(c) and 364(d)(1) and Bankruptcy Rule 4001(c), the entry of an order, in the form attached hereto (the "Order"), authorizing the Debtor to enter into the Seventh Amendment to its Debtor-In-Possession Credit Agreement attached hereto as Exhibit A (the "Seventh Amendment") with PNC Bank, National Association ("Lender") and in support thereof, the Debtor states as follows:

**BACKGROUND**

1. On April 16, 2000 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of its assets and is authorized thereby,

as debtor-in-possession, to continue the operation and management of its business. No trustee or examiner has been appointed.

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue of the Debtor's Chapter 11 case and this Motion is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

### THE DEBTOR'S PRE-PETITION CREDIT FACILITY WITH THE LENDER

3. On or about January 24, 1992, the Debtor executed and delivered to the Lender an Amended and Restated Credit Agreement (as such Credit Agreement was amended from time to time, the "Prepetition Loan Agreement"), pursuant to which the Lender agreed to make loans and other financial accommodations to the Debtor as more specifically described therein. A true and correct copy of the Prepetition Loan Agreement as amended was included in an Index of Loan Documents previously filed with the Court in connection with the Agreed Interim and Proposed Final Order Authorizing The Limited Use of Cash Collateral discussed below (Document No. 67 filed 5-2-00) (the "Index"). The Prepetition Loan Agreement and various other "Loan Documents" (as defined in Article I of the Prepetition Loan Agreement and as set forth in the Index) are referred to herein as the "Prepetition Agreements".

4. The Prepetition Indebtedness was secured by a lien on various assets of the Debtors, including:

(1) Accounts;[1]

(2) Inventory;

---
1 Capitalized terms used in these descriptions have the meaning ascribed to such terms in the Prepetition Loan Agreement.

(3) notes, drafts, checks, acceptances, Instruments, Chattel Paper, and General Intangibles in connection with or arising from Accounts;

(4) obligations of any kind due or to become due to the Debtor and all guaranties and suretyship agreements related thereto;

(5) Equipment and Fixtures purchased with proceeds of the Loans;

(6) Equipment and Fixtures in any way relating to or used in connection with and located at the Debtors' facility at Port Allegheny, Pennsylvania;

(7) property, credits, securities or monies (whether matured or unmatured) which may at any time be delivered to, or be in the possession of, or owed by the Lender, including the balance of any time or deposit account maintained by the Debtor with the Lender (with the exception of funds deposited into account number 2-573849, caption "Pittsburgh Corning Corporation Legal Department Account");

(8) products and proceeds of all the foregoing; and

(9) mortgage on the Debtor's real property in McKean County, Pennsylvania.

## THE CASH COLLATERAL ORDER

5. At the time of the filing of this case, in order to address the Debtor's need to fund its operating expenses and other costs, the Debtor and the Lender negotiated the terms of an Agreed Interim and Proposed Final Order Authorizing The Limited Use of Cash Collateral and Granting Adequate Protection (the "Interim Cash Collateral Order"), which was entered by the Court on April 20, 2000. The Interim Cash Collateral Order allowed the Debtor to use the Lender's cash collateral for the period through and including May 19, 2000 to fund its operations pursuant to a budget and subject to the terms of the Interim Cash Collateral Order. By order of the Court entered on May 18, 2000 (the "Final Cash Collateral Order", and together with the Interim Cash Collateral Order, the "Cash Collateral Order"), the Debtor was allowed to use the Lender's cash collateral through and including June 13, 2000, the date previously set for a final hearing on a Motion for approval of the Initial DIP Loan, subject to the terms of that order.

6. In consideration for the Lender's consent to the use by the Debtor of its cash collateral, the Cash Collateral Order granted the Lender certain rights and protections, including (1) a replacement lien on all property of the Debtor and its estate (the "Estate") with the exception of (i) any cause of action of the Estate arising solely under Sections 544, 546, 547, 548, 549, or 553(b) of the Code and the right of recovery related to such actions under Section 550 of the Code, (ii) the Debtor's rights to payments from insurance companies or insurance policies except payments or policies related to property coverage (the "Insurance Payment Rights"), and (iii) the proceeds of the Insurance Payment Rights in the Debtor's bank account No. 00-0257-3849 at the Lender or any successor account (collectively, the "Excluded Property"), and (2) an administrative priority claim in the amount of the "Adequate Protection Obligation" as defined in the Cash Collateral Order – essentially the amount of the diminution, if any, of the Lender's rights in the Prepetition Collateral occurring after the Petition Date.

7. While the Cash Collateral Order was sufficient to fund the Debtor's operations during the first few weeks of this case, the Debtor believed that it was in the best interest of the Estate and the Debtor's operations to obtain a debtor-in-possession financing facility rather than relying on the use of cash collateral. In addition, the Lender did not consent to the use of its cash collateral beyond the expiration of the Cash Collateral Order.

8. As a result, the Debtor negotiated with the Lender for the Lender to provide the Debtor a debtor-in-possession financing facility (the "DIP Facility"), which was approved by an order of the Bankruptcy Court dated June 14, 2002 (the "Financing Order").

## THE DEBTOR-IN-POSSESSION FINANCING FACILITY

9. Pursuant to the Financing Order the Debtor and the Lender entered into the Postpetition Loan Agreement, which provided a revolving loan (the "Revolving Credit

Loan") and letter of credit facility to the Debtor in the collective, original maximum principal amount of $35 million. Upon entry of the Financing Order, the Debtor used the proceeds of the Revolving Credit Loan to refinance its obligations under the Prepetition Loan Agreement. Thereafter, the Debtor has used proceeds of the Revolving Credit Loan for general corporate purposes. In addition, upon entry of the Financing Order, all outstanding letters of credit of the Debtor under the Prepetition Loan Agreement were deemed to have been issued under the Postpetition Loan Agreement.

10. The DIP Facility initially had a maturity date of June 28, 2002. In addition, the revolving loan portion of the commitment under the Postpetition Loan Agreement was periodically reduced according to an agreed schedule to the current amount of $12,000,000.

11. To secure, among other things, the Debtor's obligations under the Postpetition Loan Agreement and the other "Loan Documents" as defined therein (the "Postpetition Indebtedness"), the Lender was granted a valid, perfected, enforceable, and non-avoidable first priority security interest in and lien and mortgage on essentially the same collateral already granted to the Lender pursuant to the Prepetition Loan Agreement and the Cash Collateral Order, subject only to a "Carveout" for the Estate's professional fees up to $1.5 million and for the fees of the Office of the United States Trustee. This collateral (the "Collateral") comprises essentially all property of the Debtor and its Estate with the exception of the Excluded Property.

**THE AMENDMENTS TO THE DIP FACILITY**

12. The DIP Facility has been amended as necessary to extend the term and to make certain other minor adjustments. The term of DIP Facility currently extends to June 30, 2011.

13. From time to time, the Debtor is required to provide letters of credit in support of its performance of certain contractual obligation entered into in the ordinary course of its business. Such letters of credit are issued pursuant to the terms of the Postpetition Loan Agreement. Generally, the term of such letters of credit is for a year or more. However, the Postpetition Loan Agreement does not permit the Lender to issue letters of credit with terms that extend beyond the term of the DIP Facility.

14. As a result, it is necessary to extend the term of the DIP Facility at this time. Pursuant to the Seventh Amendment the term of the DIP Facility will be extended to June 30, 2013. The Debtor will pay a facility fee of $15,000 for the extension of the DIP Facility. If the Debtor exits bankruptcy prior to July 1, 2011 the $15,000 facility fee will be credited to fees associated with any post-bankruptcy credit agreement entered into by reorganized PCC and the Lender, and if the Debtor exits bankruptcy after July 1, 2011 but before July 1, 2012 and reorganized PCC enters into a post-bankruptcy credit agreement with the Lender, $7,500 shall be credited to such fees.

## THE BENEFITS OF THE AMENDMENT TO THE DIP FACILITY

15. The amendment of the DIP Facility is beneficial for the Debtor's estate. The ability to have letters of credit issued provide the Debtor with a substantial benefit when bidding on and competing for major projects. It is also more efficient, both from a timing and expense perspective, to have a single, pre-approved, secured credit facility than to seek Bankruptcy Court approval for individual, ordinary course projects.

16. While the Debtor currently has substantial cash reserves, the Debtor believes that it is a prudent exercise of its business judgment to keep in place a revolving credit facility so that it will be prepared to meet sudden needs for additional working capital should

they arise. The DIP Facility, as amended, remains a low cost means of protection against extraordinary working capital needs and a source of liquidity and credit support that engenders confidence among the Debtor's creditors, customers and employees.

17. Finally, the Debtor believes that the economic terms of the DIP Facility are favorable to the Debtor. In particular, the Debtor believes that the DIP Facility's interest rate and fee structure are at or below the interest rate and fees being charged other debtors-in-possession and otherwise obtainable by the Debtor, and that the terms of the Postpetition Loan Agreement, as amended, are as favorable, or more favorable, than comparable terms in other debtor-in-possession financing facilities being offered to such debtors or available to the Debtor. Under the circumstances, the Debtor submits that the proposed financing, as amended by the Sixth Amendment, is both necessary and appropriate.

WHEREFORE, the Debtor respectfully requests that the Court: (1) enter an order in the form appended hereto authorizing the Debtor to: (i) enter into the Sixth Amendment to the Debtor-in-Possession Credit Agreement attached as Exhibit A hereto; (ii) borrow money and seek other financial accommodations from the Lender pursuant to the DIP Facility as amended; (iii) continue the liens, security interests and mortgages in the property of the Estate granted to the Lender, pursuant to Bankruptcy Code §§ 364(c) and 364(d)(1), to secure payment of the foregoing borrowings by, and financial accommodations made to, the Debtor, (iv) continue the Lender's administrative priority claims, pursuant to Bankruptcy Code § 364(c)(1), for such borrowings and financing accommodations, and (v) provide the Lender with the other benefits provided in the DIP Facility as amended; and (2) grant the Debtor such other and further relief as the Court deems just and proper.

Dated: June 15, 2010  Respectfully submitted,

<u>/s/ David Ziegler</u>
David Ziegler (PA I.D. #37527)
Reed Smith LLP
225 Fifth Avenue, STE 1200
Pittsburgh, PA 15222
(412) 288-3026
dziegler@reedsmith.com

Counsel for Debtor