# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) In Proceedings for a Reorganization |
| | ) Under Chapter 11 |
| PITTSBURGH CORNING CORPORATION, | ) |
| | ) Case No. 00-22876-JKF |
| Debtor. | ) |
| | ) Hearing Date, Time & Location: |
| PITTSBURGH CORNING CORPORATION, | ) September 20, 2011 at 1:00 p.m. |
| COMMITTEE OF ASBESTOS CREDITORS, | ) |
| FUTURE CLAIMANTS' REPRESENTATIVE, | ) Courtroom A, 54th Floor US Steel |
| PPG INDUSTRIES, INC., and CORNING, | ) Pittsburgh, PA 15219 |
| INCORPORATED, | ) |
| | ) Objection Deadline: September 2, 2011 |
| Movants, | ) |
| | ) Related to Doc. No. 8321 |
| vs. | ) |
| | ) |
| GARLOCK SEALING TECHNOLOGIES, LLC, | ) Doc. No. |
| MT. McKINLEY INSURANCE COMPANY | ) |
| AND EVEREST REINSURANCE COMPANY, | ) |
| and REAUD MORGAN CLAIMANTS[1], | ) |
| | ) |
| Respondents. | ) |

## PLAN PROPONENTS' AND PLAN SUPPORTERS' MOTION FOR RECONSIDERATION OF MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION OF THE MODIFIED THIRD AMENDED PLAN OF REORGANIZATION FOR PITTSBURGH CORNING CORPORATION

Plan Proponents[2] and Plan Supporters[3] expect that they will be in a position to propose amendments to the Modified Third Amended Plan of Reorganization of Pittsburgh Corning Corporation (the "Plan") to resolve the matters identified in the Court's June 16, 2011,

---

[1] Certain tort claimants represented by the law firm of Reaud Morgan & Quinn who submitted objections to the Modified Third Amended Plan of Reorganization of Pittsburgh Corning Corporation at Doc. No. 7066.

[2] The Debtor, the Asbestos Claimants Committee, and the Future Claimants' Representative.

[3] PPG Industries, Inc. ("PPG") and Corning Incorporated ("Corning").

- 1 -

Memorandum Opinion and Order (Doc. 8321) ("Opinion"). Nonetheless, to preserve their rights in the event that such efforts are not successful, including the right to possible appellate review of the Memorandum Opinion and Order under *In re Armstrong World Industries, Inc.*, 432 F.3d 507 (3d Cir. 2005), Plan Proponents and Plan Supporters hereby move pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59(e) for reconsideration of the Memorandum Opinion and Order and to alter or amend the Memorandum Opinion and Order, on the grounds set forth below.

**Insurance Neutrality**

1. Plan Proponents and Plan Supporters understand "insurance neutrality" to be a method of assuring insurers of the Debtor, PPG, and/or Corning that the Plan confirmation process will not affect the scope of their coverage obligations, if any, or the extent of defenses to coverage, if any. If the Plan is "insurance neutral," then the confirmation of the Plan will not adversely affect the insurers' coverage obligations or defenses, and they therefore will not have standing to object to confirmation based on any such grounds.

2. Dozens of insurers with disputed coverage obligations to the Debtor, PPG, and/or Corning have agreed that sections 11.17 and 11.13.1 properly protect their respective interests with respect to possible future coverage litigation. *See* Stipulation Resolving Plan Objections (Doc. No. 7659). If Plan Proponents and Plan Supporters can adjust those sections to address the Court's identified concerns as to Mt. McKinley while preserving the existing arrangements with the other insurers, they will do so.

3. If, however, such an adjustment is not possible, Plan Proponents and Plan Supporters believe that the consequence should be merely that Mt. McKinley has standing to

object to the Plan (as it has done) and the right to have the Court consider and rule upon its objections on the merits.

4. The Court has already rejected Mt. McKinley's good-faith and TDP-based objections. Plan Proponents and Plan Supporters believe that they will be able to amend the Plan to address the Court's concerns regarding the scope of the Asbestos Permanent Channeling Injunction (the "Injunction"), and that Mt. McKinley's remaining objections to the Injunction and supposedly "unnecessary" findings will be rejected on the merits or because those findings are incapable of harming any legitimate interest of Mt. McKinley.

5. In other words, Plan Proponents and Plan Supporters are prepared, if necessary to preserve the existing arrangements with other insurers, to forego any reliance on Plan section 11.17 "insurance neutrality" as to Mt. McKinley as grounds to argue against Mt. McKinley's standing, and to have Mt. McKinley's objections resolved on their merits.

6. The Opinion, however, appears at one point to require Plan Proponents and Plan Supporters to amend the Plan so as to render it "insurance neutral." See Opinion at 62. Plan Proponents and Plan Supporters respectfully note, however, that Mt. McKinley does not have a substantive right to "insurance neutrality." So long as the Bankruptcy Code or other applicable law allows a plan to have certain effects on an insurer, the insurer is entitled only to the opportunity to object (and to be heard) that some aspect of the Plan or its adoption is improper under the Code or applicable law. If the Plan cannot be amended to be sufficiently "insurance neutral," Mt. McKinley will be free to contest the legality of the Plan, but it is not entitled to be immunized from the effects of the Plan any more than any a trade creditor, landlord, or anyone else affected by a Plan would be entitled to "neutrality."

7.      In any event, Plan Proponents and Plan Supporters continue to believe that even as currently drafted, the provisions of sections 11.13 and 11.17 provide the "insurance neutrality" that this Court has stated it is seeking as a condition of plan confirmation. Section 11.17 is derived from, and (aside from the use of certain defined terms) is substantially similar to, the "super-preemptory" provision added to the plan of reorganization by the court in *In re Combustion Engineering, Inc.*, 391 F.3d 195, 209 (3d Cir. 2004). Moreover, section 11.13.1 provides the same kinds of conceptual protections in the context of insurance rights and obligations as did the "insurance neutrality" provision crafted by the district court in Combustion Engineering. *See id.* at 212.

8.      Although it is true that sections 11.13 and 11.17 are subject to provisos not included in the aforementioned Combustion Engineering plan provisions, the provisos simply tailor the insurance neutrality of this Plan to the peculiar facts of this case.

9.      Plan Proponents and Plan Supporters respectfully request that the Court reconsider its conclusion that the existing language in the Plan, particularly sections 11.13 and 11.17, do not cause the Plan to be "insurance neutral."

**The Asbestos Permanent Channeling Injunction**

10.     Plan Proponents and Plan Supporters are optimistic that they will be able to revise the Plan to resolve the concerns expressed by the Court in the Memorandum Opinion. Nonetheless, Plan Proponents and Plan Supporters respectfully request the Court to reconsider its conclusion that the Injunction, as it now stands, is potentially overbroad.

11.     The Court concluded that the Plan is overbroad because it uses the defined term "Asbestos Personal Injury Claim," a term that includes injuries resulting from a broad range of asbestos products, including Pyrocal and Corhart. See Opinion at 33. As the Court notes, under

the *Combustion Engineering* decision, PPG and Corning can be protected from Pyrocal and Corhart claims only to the extent that those claims satisfy the requirements of section 524(g)(4)(A)(ii) because they involve "conspiracy" theories or other attempts to involve the Debtor or its conduct as a basis for the claim, or otherwise.

12. The proposed Injunction applies only to "Channeled Asbestos PI Trust Claims," and that term itself applies to "Any Asbestos PI Trust Claim against an Asbestos Protected Party."[4] Thus, no matter how broad the definition of "Asbestos Personal Injury Claim" may be, PPG and Corning are protected by the Injunction only to the extent that they are "Asbestos Protected Parties."

13. Parts (b)(2) and (d)(2) of the definition of "Asbestos Protected Party" protect PPG and Corning, respectively, against Pyrocal and Corhart claims *only* under the specified circumstances set forth in section 524(g)(4)(A)(ii)(I-IV) -- namely, those involving the Debtor or conduct of the Debtor arising out of ownership of an interest in the Debtor, involvement in the management of the Debtor, provision of insurance to the Debtor, or involvement in certain types of transactions affecting the Debtor or related parties.

14. Therefore, the broad definition of "Asbestos Personal Injury Claim" does not allow PPG or Corning to have more protection than permitted by section 524(g). In order for PPG or Corning to be protected under the Injunction, there must be *both* an "Asbestos Personal Injury Claim" and satisfaction of the relevant criteria in the definition of "Asbestos Protected Party."

---

[4] "Channeled Asbestos PI Trust Claim" is defined in the Plan as: "Any Asbestos PI Trust Claim against an Asbestos Protected Party. For the avoidance of doubt, Channeled Asbestos PI Trust Claims do not include Reserved Claims."

## Request to Stay Briefing and Consideration of Motion

15. As noted above, Plan Proponents and Plan Supporters believe that they can amend the Plan to address the issues raised by the Opinion, and respectfully request that the Court hold this Motion in abeyance pending entry of a separate order establishing a briefing schedule regarding the issues identified herein and on Appendix A hereto if and when briefing becomes necessary. In the meantime, Plan Proponents and Plan Supporters believe that litigating this Motion, particularly in view of the scheduled July 20, 2011, status conference to address steps to be taken, would be an unnecessary diversion of time and resources for the Court and all parties in interest.

Dated: June 30, 2011

Respectfully submitted by:

**ASBESTOS CLAIMANTS COMMITTEE**

By Counsel:

/s/ Peter Van N. Lockwood
Peter Van N. Lockwood
Elihu Inselbuch
Caplin & Drysdale, Chartered
One Thomas Circle, N.W., Suite 1100
Washington, D.C. 20005

/s/ Philip E. Milch
Douglas A. Campbell
Philip E. Milch
Campbell & Levine, LLC
1700 Grant Building
Pittsburgh, PA 15219

**FUTURE CLAIMANTS'
REPRESENTATIVE
LAWRENCE FITZPATRICK**

By Counsel:

/s/ Edwin J. Harron
James L. Patton, Jr.

**PITTSBURGH CORNING CORPORATION**

By Counsel:

/s/ Douglas E. Cameron
James J. Restivo, Jr.
Douglas E. Cameron
David Ziegler
Andrew J. Muha
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

**CORNING INCORPORATED**

By Counsel:

/s/ Elene Mountis Moran
Elene Mountis Moran
Thorp Reed & Armstrong
One Oxford Centre, 14th Floor
Pittsburgh, PA 15219

/s/ Cheryl A. Heller
Cheryl A. Heller

Edwin J. Harron
Sara Beth A.R. Kohut
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

/s/ Joel M. Helmrich
Dinsmore & Shohl LLP
One Oxford Centre
301 Grant Street; Suite 2800
Pittsburgh, PA 15219

Ward Greenberg Heller & Reidy LLP
300 State Street
Rochester, NY 14614

**PPG INDUSTRIES, INC.**

By Counsel:

/s/ David F. McGonigle
Peter J. Kalis
David A. Murdoch
Neal R. Brendel
David F. McGonigle
K&L Gates LLP
K& L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222