# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **In re:** | ) | **In Proceedings for a** |
|  | ) | **Reorganization under Chapter 11** |
| **PITTSBURGH CORNING CORPORATION** | ) |  |
|  | ) |  |
| **Debtor.** | ) | **CASE NO. 00-22876 JKF** |
|  | ) |  |

### DEBTOR'S PROPOSED PLAN AMENDMENTS DATED SEPTEMBER 17, 2011 TO THE MODIFIED THIRD AMENDED PLAN OF REORGANIZATION FOR PITTSBURGH CORNING CORPORATION DATED JANUARY 29, 2009 JOINTLY PROPOSED BY PITTSBURGH CORNING CORPORATION, THE OFFICIAL COMMITTEE OF ASBESTOS CREDITORS AND THE FUTURE CLAIMANTS' REPRESENTATIVE

### ARTICLE I

### DEFINITIONS, CONSTRUCTION OF TERMS

## 1.1   Defined Terms

As used herein, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

**Asbestos Permanent Channeling Injunction**

An order or orders of the Bankruptcy Court and/or the District Court issued pursuant to Section 524(g) of the Bankruptcy Code, and any other powers that the Bankruptcy Court or the District Court possess, including but not limited to those powers granted under sections 1123(b)(3), 1123(b)(6) or 1129(a)(11) of the Bankruptcy Code, permanently and forever staying, restraining, and enjoining any Entity from taking any action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Channeled Asbestos PI Trust Claim (all of which shall be channeled to the Asbestos PI Trust for resolution), including but not limited to:

(a)   commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party or any property or interests in property of any Asbestos Protected Party;

(b)   enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or

other order against any Asbestos Protected Party or any property or interests in property of any Asbestos Protected Party;

        (c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party or any property or interests in property of any Asbestos Protected Party;

        (d)     seeking setoff, reimbursement, indemnification, or contribution from, or subrogation against, any Asbestos Protected Party or otherwise setting off or recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party; and

        (e)     proceeding in any manner adverse to any Asbestos Protected Party or the property of any Asbestos Protected Party in any place with regard to any matter that is subject to resolution pursuant to the Plan and the Asbestos PI Trust Distribution Procedures, except in conformity and compliance therewith.

*The Asbestos Permanent Channeling Injunction shall **NOT** apply to any Non-Derivative PPG/Corning Claim nor any Reserved Claims.*

## Asbestos Personal Injury Claim

Any past, present, or future Claim, right, remedy, liability, or Demand made or brought or that could be made or brought against:

        (a)     the Debtor, Reorganized PCC and/or the PCC-Affiliated Parties;

        (b)     PCE;

        (c)     any PPG Entities and/or any PPG-Affiliated Parties (including any liabilities retained or assumed by the PPG Entities arising from, based upon, or attributable to Asbestos Personal Injury Claims);

        (d)     any PPG Participating Insurer Entities in their capacity as such, and/or as issuers of the PPG Participating Insurance Policies and policies issued to or covering the Debtor (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

        (e)     any Corning Entities and/or any Corning-Affiliated Parties (including any liabilities retained or assumed by the Corning Entities arising from, based upon, or attributable to Asbestos Personal Injury Claims);

        (f)     any Corning Protected Insurers, in their capacity as such, and/or as issuers of the Corning Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law); or

(g)     any PCC Settled Insurers, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

under any statute or theory of law, equity, admiralty, or otherwise, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship, arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos containing products or materials (including without limitation (i) such Claims or Demands arising in whole or in part out of any actual or alleged relationship on the part of either the PPG Entities or the Corning Entities with the Debtor or (ii) such Claims or Demands that are allegedly covered by (a) shared insurance policies covering both the PPG Policyholder Companies and the Debtor or policies covering either of them, or (b) shared insurance policies covering both the Corning Policyholder Companies and the Debtor or policies covering either of them), which seek damages of any kind (including but not limited to punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable or mandatory relief, under any statute or theory of law, equity, admiralty or otherwise; provided, however, that this definition shall not include (i) any PPG Asbestos Premises Claims as to the PPG Entities; (ii) any Corning Asbestos Premises Claims as to the Corning Entities; or (iii) any Workers Compensation Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Asbestos PI Trust Claims**

All Asbestos Personal Injury Claims, Indirect Asbestos Claims and PCC/PPG Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Asbestos Protected Party**

Any of the following Entities:

(a)     the Debtor, Reorganized PCC and/or the PCC-Affiliated Parties;

(b)     the PPG Entities, the PPG Affiliates and the PPG-Affiliated Parties, with respect to Asbestos PI Trust Claims that arise, in whole or in part, out of exposure to:

(1)     Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises; or

(2)     any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on the Debtor by reason

of any of the PPG Entities', the PPG Affiliates', the PPG-Affiliated Parties' or the PPG Participating Insurer Entities': (i) ownership of a financial interest in the Debtor; (ii) involvement in the management of the Debtor, or service as an officer, director or employee of the Debtor or a related party; (iii) provision of insurance to the Debtor or a related party; or (iv) involvement in a financial transaction affecting the financial condition of the Debtor or a related party;

(c)     the PPG Participating Insurer Entities, in their capacity as such and/or as issuers of PPG Participating Insurance Policies and policies issued to or covering the Debtor;

(d)     the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties and the Corning Protected Insurers, in their capacity as such and/or as issuers of the Corning Insurance Policies, with respect to Asbestos PI Trust Claims that arise, in whole or in part, out of exposure to:

(1)     Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises; or

(2)     any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on the Debtor by reason of any of the Corning Entities', the Corning Affiliates', the Corning-Affiliated Parties' or the Corning Insurers': (i) ownership of a financial interest in the Debtor; (ii) involvement in the management of the Debtor, or service as an officer, director or employee of the Debtor or a related party; (iii) provision of insurance to the Debtor or a related party; or (iv) involvement in a financial transaction affecting the financial condition of the Debtor or a related party;

(e)     without limiting any protection afforded by subsection (c) above, and for the avoidance of doubt, the PCC Settled Insurer Entities, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies;

(f)–     any Entity (and any past, present, or future corporate parent, subsidiary, predecessor, Affiliate, officer, director, employee, consultant, attorney, accountant, advisor, administrator, representative or agent of any such Entity, in his, her or its capacity as such) that, pursuant to the Plan or after the Effective Date, becomes a direct or an indirect transferee of, or successor to, (i) any of the Entities identified in subparagraphs (a) – (e) above, (ii) the Asbestos PI Trust or (iii) the assets or stock of any of the parties referenced in clauses (i) or (ii) hereof (but only to the extent that liability is asserted to exist by reason of its becoming such transferee or successor);

(g)     any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to any of the Entities identified in subparagraphs (a) – (e) above (but only to the extent that liability is asserted to exist by reason of such Entity's becoming such a lender

or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired);

(h)     any Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtor, Reorganized PCC, or the Asbestos PI Trust on account of Asbestos PI Trust Claims by reason of one or more of the following:

(1)     such Entity's involvement in the management of the Debtor, Reorganized PCC or an Affiliate of the Debtor or any predecessor in interest of the Debtor, Reorganized PCC, or an Affiliate of the Debtor, including PPG and Corning;

(2)     such Entity's ownership of a financial interest in the Debtor, Reorganized PCC, or a past or present Affiliate of the Debtor, or any predecessor in interest of the Debtor, Reorganized PCC, or an Affiliate of the Debtor, including PPG and Corning;

(3)     such Entity's service as an officer, director, or employee of the Debtor, Reorganized PCC, or predecessor in interest and/or Affiliate of the Debtor, including PPG and Corning;

(4)     such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition of the Debtor, Reorganized PCC, or a predecessor in interest and/or Affiliate of the Debtor, including PPG and Corning.

The Corning Parties and the Corning Insurers are not Asbestos Protected Parties among themselves with respect to Reserved Claims.

**Channeled Asbestos PI Trust Claim**

Any Asbestos PI Trust Claim against an Asbestos Protected Party. For the avoidance of doubt, Channeled Asbestos PI Trust Claims do not include Reserved Claimsany Reserved Claims nor any Non-Derivative PPG/Corning Claims. The fact that a person has asserted, or in the future asserts against the Asbestos PI Trust, a Channeled Asbestos PI Trust Claim will not by itself cause any other claim held by that person to become channeled if the other claim does not otherwise fall within the definition of Channeled Asbestos PI Trust Claim.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Corning Parties**

Any of the Corning Entities, Corning Affiliates and/or Corning-Affiliated Parties. The definition of "Corning Parties" does not include PCE.

## Corning Trust Contribution Recovery Claims

Any past, present or future claims, rights, remedies, liabilities, demands, defenses and/or causes of action by Corning against any Corning Non-Protected Insurer for recovery of the Corning Trust Contribution.

## Debtor-Released Claims

Any and all Claims, and causes of action of any nature that the Debtor has or in the future may have, or with respect to which the Debtor has the power to grant a release or waiver, based on, arising out of, or relating to, in whole or in part, acts, omissions, occurrences or events prior to the Confirmation Date, against any Debtor-Released Party, including, without limitation, (a) Claims and causes of action related to any inter-company dealings between PPG, on the one hand, and the Debtor, on the other hand, including, without limitation, Claims and causes of action pertaining to consulting, advice, undertakings, or services with respect to asbestos or industrial hygiene; (b) Claims and causes of action against any PCC Settled Insurers, PPG Participating Insurers, PPG Non-Participating Insurers or PPG Insolvent Insurers pertaining to accrued or future insurance coverage or other entitlements to insurance proceeds or insurance policy benefits (including claims under the Wellington Agreement), and pertaining to any and all extra-contractual rights (including any statutory or common law bad faith or unfair claim handling rights) on account of Asbestos PI Trust Claims, but excluding remaining payment obligations, if any, of (i) a PCC Settled Insurer under a PCC Insurance Settlement Agreement, or (ii) a PPG Participating Insurer, PPG Non-Participating Insurer or PPG Insolvent Insurer under a Pre-1981 PCC Settlement Agreement that relates to pre-1981 policies as designated on Schedule H to the PPG Trust Funding Agreement; (c) Claims and causes of action related to any inter-company dealings between Corning, on the one hand, and the Debtor, on the other hand, including, without limitation, Claims and causes of action pertaining to consulting, advice, undertakings, or services with respect to asbestos or industrial hygiene; (d) Claims and causes of action against any Corning Insurers pertaining to accrued or future insurance coverage or other entitlements to insurance proceeds or insurance policy benefits, and pertaining to any and all extra-contractual rights (including any statutory or common law bad faith or unfair claim handling rights) on account of Asbestos PI Trust Claims; (e) Claims and causes of action in the nature of fraudulent transfer, fraudulent conveyance, successorship, improper dividend or distribution, veil piercing, preference, alter-ego, fiduciary duty, corporate opportunity, oppression, inadequate capitalization, denuding the corporation, corporate trust fund, "mere instrumentality," single-business enterprise, agency, or domination and control; and (f) Claims and causes of action in the nature of contribution, indemnity, or other sharing or shifting of liability or responsibility among actual or alleged tortfeasors, including, without limitation, such Claims and causes of action arising out of or relating to Asbestos PI Trust Claims.

Reserved Claims shall not be treated as Debtor-Released Claims under the Plan.

## Indirect Asbestos Claim

Any past, present or future Claim, right, remedy, liability or Demand made or brought or that could be made or brought against:

(a) the Debtor, Reorganized PCC, or the PCC-Affiliated Parties;

(b) PCE;

(c) any PPG Entities and/or any PPG-Affiliated Parties (including any claims or demands arising from liabilities retained or assumed by the PPG Entities arising from, based upon or attributable to Indirect Asbestos Claims);

(d) any PPG Participating Insurer Entities in their capacity as such, and/or as issuers of the PPG Participating Insurance Policies and policies issued to or covering the Debtor (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

(e) any Corning Entities and/or any Corning-Affiliated Parties (including any claims or demands arising from liabilities retained or assumed by the Corning Entities arising from, based upon or attributable to Indirect Asbestos Claims);

(f) any Corning Protected Insurers, in their capacity as such, and/or as issuers of the Corning Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law); or

(g) any PCC Settled Insurer Entities, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

under any statute or theory of law, equity, admiralty, or otherwise, for contribution, reimbursement, subrogation, guaranty, payment or indemnity, or insurance coverage on account of liability incurred in an action in which the claimant has been or is a defendant in such action containing a Claim or Demand for damages of any kind (including, but not limited to, punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable, statutory or mandatory relief, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos containing products or materials, except for: (i) any liability based on PPG Asbestos Premises Claims as to the PPG Entities; or (ii) any liability based on Corning Asbestos Premises Claims as to the Corning Entities.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Insurance Settlement Agreements**

Any past, present, or future agreements, including the releases and covenants contained therein, in respect of insurance policies issued to or covering the Debtor, PPG, or Corning,

including without limitation the PCC Insurance Settlement Agreements, the PPG Trust Funding Agreement, the Insurance Claims Agreement, and the Stipulation, as applicable.

## Non-Derivative PPG/Corning Claim

A non-derivative, independent Claim against a PPG Entity, PPG Affiliate, PPG-Affiliated Party, Corning Entity, Corning Affiliate, or Corning-Affiliated Party or Corning Protected Insurer alleging exposure to Pyrocal (or any other PPG product) or to Corhart spacers (or any Corning product) that is wholly unrelated to the Debtor. For the avoidance of doubt, a Non-Derivative PPG/Corning Claim is any Claim against the foregoing Entities that does not involve Unibestos or other asbestos or asbestos-containing product manufactured, sold, and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises, unless such Claim is a PCC Conspiracy Theory Claim or by pleading, evidence, proof, allegation, proffer of evidence or otherwise involves PCC or its conduct as the basis for liability of one of the foregoing Entities.

## PCC Conspiracy Theory Claim

A Claim in which PPG or Corning is alleged to be liable with PCC based on allegations of conspiracy, alter ego, piercing the corporate veil, domination and control, concert of action, common enterprise, aiding and abetting, respondeat superior, negligent provision of services, principal and agent, successor in interest, and other joint and/or several liability theories.

## PCC/PPG Insurance Practices Claims

All past, present or future Claims or Demands that (i) allege unfair competition, unfair or deceptive claims handling or trade practices, insurer bad faith, conspiracy, failure to disclose information, or any similar theory of law, arising out of or based on or attributable to the handling of any asbestos-related claim against the PPG Entities or the Debtor or (ii) seek recovery or relief from any of the PCC Settled Insurers or PPG Participating Insurers (or any past or present corporate parent, subsidiary, predecessor or Affiliate of any PCC Settled Insurer or PPG Participating Insurer), in its capacity as an insurer of the PPG Entities or the Debtor, or any of their respective past or present officers, directors, employees, agents, representatives and attorneys, or the successors of any of them, in their capacity as such, arising out of or based on or attributable to, in whole or in part, asbestos or asbestos-related claims. Notwithstanding the foregoing, any claim that meets the definition of Asbestos Personal Injury Claims, Indirect Asbestos Claims, PPG Asbestos Premises Claims, Corning Asbestos Premises Claims, or Asbestos Property Damage Claims is excluded from this definition of PCC/PPG Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

## Plan Participation Claims

Any direct or indirect liability to any Entity for any act or omission in connection with resulting from, attributable to, or arising out of the Chapter 11 Case including, but not limited to, support of the Plan and prior proposed plans, pursuit of confirmation of the Plan, the

consummation of the Plan, the implementation of the Plan pursuant to the Asbestos PI Trust Distribution Procedures and other related Plan documents, or the administration of the Plan or the property to be distributed under the Plan.

Reserved Claims shall not be treated as Plan Participation Claims under the Plan.

**Reserved Claims**

Any past, present or future claims, rights, remedies, liabilities, demands, defenses and/or causes of action by any of the Corning Parties, and/or their insurers (in their capacity as insurers of the Corning Parties) in connection with the Corning Insurance Policies and/or the Other Corning Policies including, but not limited to, any claims or demands for defense, indemnity, contribution, bad-faith, breach of contract, reimbursement, Corning Trust Contribution Recovery Claims and/or extra-contractual remedies. Reserved Claims shall not include any claims for contribution, indemnity, reimbursement, equitable subrogation, or similar claims-over by a Corning Non-Protected Insurer against a Corning Protected Insurer in connection with Corning Trust Contribution Recovery Claims.

## 1.2    Other Terms

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

When used in the Plan, the words "includes" and "including" are not limiting.

## *ARTICLE IV*

### CHANNELED ASBESTOS PI TRUST CLAIMS AND THE ASBESTOS PERMANENT CHANNELING INJUNCTION

**All Channeled Asbestos PI Trust Claims shall be resolved pursuant to the terms, provisions, and procedures of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures attached as Exhibits A and B hereto. The Asbestos PI Trust will be funded in accordance with the provisions of Section 9.1.3 of the Plan and Section 1.3 of the Asbestos PI Trust Agreement. *The sole recourse of the holder of a Channeled Asbestos PI Trust Claim shall be to the Asbestos PI Trust, and such holder shall have no right whatsoever at any time to assert such Channeled Asbestos PI Trust Claim against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, regardless of whether the Asbestos PI Trust pays or is able to pay such Channeled Asbestos PI Trust Claim in whole or in part.* Without limiting the foregoing, on the Effective Date, the Asbestos Permanent Channeling Injunction shall apply to all holders of Channeled Asbestos PI Trust Claims, and all such holders of Channeled Asbestos PI Trust Claims shall be permanently and forever stayed, restrained, and enjoined from taking any actions for the purpose of directly or indirectly collecting, recovering, or receiving payment**

of, on, or with respect to any such Channeled Asbestos PI Trust Claim other than from the Asbestos PI Trust.

~~Nothing in this Article IV shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."~~

### ARTICLE XI

### MISCELLANEOUS PROVISIONS

**11.9    Judgment Reduction**

(a)    The agreement of the PPG Participating Insurers to make the payments specified in the PPG Trust Funding Agreement shall constitute a good faith compromise and settlement of claims of the PPG Entities, the PPG-Affiliated Parties, and the Debtor against the PPG Participating Insurer Entities relating to the Channeled Asbestos PI Trust Claims. PPG shall reduce or return the amount of any judgment, including any associated interest or costs, to which it would be entitled in connection with any cause of action against any PPG Non-Participating Insurer (or any other Entity allegedly liable for or on account of any PPG Non-Participating Insurer) to the extent necessary to extinguish any liability of any PPG Participating Insurer Entity, PCC Settled Insurer or Corning Protected Insurer for any judgment for contribution, indemnity, reimbursement, or similar claims-over in respect of any cause of action against any PPG Non-Participating Insurer (or any other Entity allegedly liable for or on account of any PPG Non-Participating Insurer). Nothing herein prohibits the PPG Non-Participating Insurers from seeking a declaration or judgment regarding an allocation and/or apportionment of their liability with respect to the payment or reimbursement of Channeled Asbestos PI Trust Claims, ~~in an action brought by PPG~~. To the extent that such a declaration or judgment regarding an allocation of liability is made against the PPG Participating Insurers, the PCC Settled Insurers, the Corning Protected Insurers and/or the PPG Entities, the judgment rendered in favor of PPG shall be reduced or reimbursed in accordance with the above.

(b)    Corning shall reduce or return the amount of any ~~final~~ judgment or settlement, including any associated interest or costs, ~~it obtains, recovers and/or receives in its favor~~to which it would be entitled in connection with any ~~cause of action for recovery of the Corning Trust Contribution against any Corning Non-Protected Insurer (said judgment hereinafter referred to as "the~~ Corning Trust Contribution Recovery~~")~~ Claim to the extent necessary to extinguish ~~the~~any liability of ~~a Corning Protected Insurer, a PCC Settled Insurer or a~~any PPG Participating Insurer ~~(or any other Entity allegedly liable for or on account of said PPG Participating Insurer~~Entity, PCC Settled Insurer or Corning Protected Insurer~~), if any, with respect to Channeled Asbestos PI Trust Claims, under or pursuant to any insurance policies for such Corning Protected Insurer's or PPG Participating Insurer's allocable share of any final judgment rendered in favor of a Corning Non-Protected Insurer and/or a PPG Non-Participating Insurer against said Corning Protected Insurer, PCC Settled Insurer or PPG Participating Insurer (or any other Entity allegedly liable for or on account of any PPG Participating Insurer, PCC Settled Insurer or any Corning Protected Insurer)~~ for any judgment for contribution, indemnity, reimbursement, or similar claims-over in respect of ~~the Corning Non-Protected Insurer's and/or the PPG Non-Participating Insurer's allocable share of the~~any Corning Trust Contribution Recovery ~~(hereinafter "the Non-Protected~~

~~Insurer Judgment");~~ *provided, however,* ~~that in no event will Corning make such a reduction or~~ ~~reimbursement: (1) if the Non-Protected Insurer Judgment arose from, pursuant to, or was a~~ ~~result of, a settlement, stipulation, and/or agreement by the party seeking to enforce this judgment~~ ~~reduction clause, unless Corning, in its sole discretion, consents in writing to such settlement,~~ ~~stipulation and/or agreement; (2) if the claims by the Corning Non-Protected Insurers and/or the~~ ~~PPG Non-Participating Insurers were not fully defended on behalf of the party seeking to enforce~~ ~~this judgment reduction clause in good faith; or (3) in an amount in excess of the amount of the~~ ~~Non-Protected Insurer Judgment~~Claim against any Corning Non-Protected Insurer (or any other Entity allegedly liable for or on account of any Corning Non-Protected Insurer). Nothing herein prohibits the Corning Non-Protected Insurers from seeking a declaration or judgment regarding an allocation and/or apportionment of their liability with respect to the payment or reimbursement of ~~the~~a Corning Trust Contribution Recovery~~, in an action brought by Corning~~ Claim. To the extent that such a declaration or judgment regarding an allocation of liability is made ~~in favor of the Corning Non-Protected Insurers~~ against the PPG Participating ~~Insurers~~Insurer Entities, the PCC Settled Insurers, the Corning Protected Insurers and/or the Corning Entities, the judgment rendered in favor of Corning shall be reduced or reimbursed in accordance with the above.

(c)     The Bankruptcy Court or, if applicable, the District Court, shall have jurisdiction to enforce this Article 11.9.

### 11.13   Corning Insurance ~~Reservation~~

11.13.1 ~~Notwithstanding anything to the contrary in the Confirmation Order, the Plan or~~ ~~any of the Bankruptcy Court's orders, nothing~~Nothing in the Confirmation Order, the Plan or any of the Bankruptcy Court's orders shall ~~enjoin,~~act as a discharge, ~~or~~ release ~~"~~or forebearance of Reserved Claims~~" as defined herein; provided, however that this Section 11.13.1 shall not limit~~ ~~or otherwise affect~~, except to the extent expressly agreed to:

(a)     in Section 11.13.2 herein;

(a~~b~~)     ~~the releases and other agreements in Section 11.13.2,~~ in the Insurance Claims Agreement ~~and/or~~;

(c)     in the Stipulation; and/or

(~~b~~d)     ~~the releases provided~~ by the PPG Participating Insurers in Sections VII.B and VII.C of the PPG Trust Funding Agreement~~, or~~

~~(e)     the protections afforded to the PPG Participating Insurer Entities and the~~ ~~PCC Settled Insurer Entities under the Plan (including, without limitation, the protection~~ ~~of the Asbestos Permanent Channeling Injunction) with respect to the PCC/PPG Policies~~ ~~(as defined in the Insurance Claims Agreement), but not with respect to the Corning~~ ~~Insurance Policies or Other Corning Policies.~~

~~"Reserved Claims" are any past, present or future claims, rights, remedies, liabilities, demands,~~ ~~defenses and/or causes of action, subject to the releases, agreements or other protections of (a),~~ ~~(b) and/or (c) above (which releases, agreements or other protections of (a), (b) and/or (e) are not~~

~~limited, or otherwise affected by operation of this Section 11.13.1) by any of the Corning Entities, the Corning Affiliates and/or the Corning - Affiliated Parties (hereafter "Corning Parties") and/or any insurer in connection with the Corning Insurance Policies and/or the Other Corning Policies (including, but not limited to, any claims or demands for defense, indemnity, contribution, bad-faith, breach of contract, reimbursement and/or extra-contractual remedies),~~ ***provided, however,*** ~~that Reserved Claims shall not include any claims for contribution, indemnity, reimbursement, equitable subrogation, or similar claims over by a Corning Non-Protected Insurer against a Corning Protected Insurer in connection with the Corning Trust Contribution Recovery. The Reserved Claims are not subject to the Asbestos Permanent Channeling Injunction and shall not be treated as (i) Asbestos Personal Injury Claim(s); (ii) Asbestos PI Trust Claims; (iii) Channeled Asbestos PI Trust Claim(s); (iv) Indirect Asbestos Claim(s); (v) PCC/PPG Insurance Practices Claim(s); (vi) Debtor-Released Claims ; and/or (vii) Plan Participation Claims under the Plan, and the Corning Parties and the Corning Insurers are not Asbestos Protected Parties among themselves with respect to the Reserved Claims. For the avoidance of doubt,~~and except as set forth in the Stipulation and Section III.C of the Insurance Claims Agreement, and subject to Section 11.13.2 of the Plan, the Corning Parties have not released in the Plan any claims, demands and/or rights they may have under or against the Corning Insurance Policies, the Other Corning Policies and/or against the Corning Insurers.

11.13.2 The Corning~~, the Corning Entities, the Corning Affiliates and the Corning Affiliated~~ Parties shall not assert any claims, or rely on any claims made by any other Entity, that any Corning Insurer that is a PPG Participating Insurer or its Affiliate engaged in any bad faith claims-handling practices or any wrongful conduct of any kind because it or its Affiliate is a PPG Participating Insurer.

~~**11.13.3** For purposes of this Section 11.13, "Corning Entities" does not include PCE or PCC.~~

## 11.14 PPG Participating Insurer Reservation

Neither the PPG Trust Funding Agreement nor the PPG Participating Insurers participation in the Plan shall be used by any Entity in any action, proceeding or hearing to support an argument that the PPG Participating Insurers approved, endorsed or supported the Plan or any of the Plan documents, including without limitation the Asbestos PI Trust Distribution Procedures, other than the PPG Trust Funding Agreement and the Insurance Claims Agreement. This Section 11.14 shall have no application with respect to Reserved Claims ~~as identified in Section 11.13.1 above.~~

## 11.17 Insurance Neutrality

Notwithstanding anything to the contrary in the Confirmation Order or the Plan, but subject to the proviso below, nothing in the Confirmation Order or the Plan (including any other provision that purports to be preemptory or supervening~~, including Section 11.13.1),~~.) shall in any way operate to impair, or have the effect of impairing, the ~~PPG Non-Participating Insurers', the Corning Protected Insurers' and/or the Corning Non-Protected Insurers~~insurers' legal, equitable or contractual rights, if any, in any respect~~. The~~; the rights of the ~~PPG Non-Participating Insurers, the Corning Protected Insurers and the Corning Non-Protected Insurers~~insurers. shall be

determined under : the PPG Non-Participating Insurance Policies, the Corning Insurance Policies, the Other Corning Policies ~~and related insurance settlement agreements~~, the PPG Participating Insurance Policies, the PCC Settled Insurance Policies; and related Insurance Settlement Agreements, as applicable.

*Provided, however*, ~~and for the avoidance of doubt, that nothing in this~~ Section 11.17 shall not preclude the entry or effectiveness of the Asbestos Permanent Channeling Injunction ~~or~~and shall not affect or limit, or be construed as affecting or limiting, the Insurance Settlement Agreements and/or the protections afforded to the Asbestos Protected Parties under the Asbestos Permanent Channeling Injunction~~, or shall affect or limit, or be construed as affecting or limiting the releases, covenants and/or agreements in the PPG Trust Funding Agreement, the Insurance Claims Agreement or the Stipulation (or any releases granted in connection therewith)~~.

### Insurance Claims Agreement

### III. Covenants

H.     The parties to this Agreement further covenant, represent, warrant, and agree:  1) that nothing in this Agreement shall limit the protections afforded the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties and/or the Corning Insurers with respect to Reserved Claims ~~as set forth in Section 11.13.1 of the Plan and with respect to~~and Section 11.13.2 (as to any Corning Insurer that is also a PPG Participating Insurer or its Affiliate) of the Plan; and 2) that the parties to this Agreement hereby incorporate into this Agreement as if fully set forth in full herein the terms of Sections 11.9, ~~11.13.1,~~11.13.1 and 11.13.2 ~~and 11.13.3~~ of the Plan.

### Asbestos PI Trust Distribution Procedures

The Pittsburgh Corning Corporation Asbestos PI Trust Distribution Procedures ("TDP") contained herein provide for resolving all Channeled Asbestos PI Trust Claims (as defined in the ~~Third Amended Plan of Reorganization for Pittsburgh Corning Corporation, Dated August 8, 2008 ("Plan")~~ Plan) for which the Asbestos Protected Parties (as defined in the Plan) may have legal responsibility, as ~~defined~~provided in and required by the Pittsburgh Corning Corporation Asbestos PI Trust Agreement ("Asbestos PI Trust Agreement").

## DRAFT AMENDMENTS TO THE ASBESTOS PI TRUST AGREEMENT

1.      Add the following as a new Section 2.4 after existing Section 2.3 of the Asbestos PI Trust Agreement:

### 2.4 Claims Reporting

(a) It is the position of the Plan Proponents that neither Reorganized PCC, PPG, Corning, the PPG Participating Insurers, nor the PCC Settled Insurers will have any reporting obligations in respect of their contributions to the Asbestos PI Trust, or in respect of any payments, settlements, resolutions, awards, or other claim liquidations by the Asbestos PI Trust, under the reporting provisions of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173), or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith ("MMSEA"). Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a final non-appealable decision from the United States Court of Appeals for the Third Circuit or the United States Supreme Court), or a letter from the Secretary of Health and Human Services confirming that Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers have no reporting obligations under MMSEA with respect to any settlements, payments, or other awards made by the Asbestos PI Trust or with respect to contributions PCC, Reorganized PCC, PPG, Corning, the PPG Participating Insurers and the PCC Settled Insurers have made or will make to the Asbestos PI Trust, the Asbestos PI Trust shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers, and shall timely submit all reports that would be required to be made by Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers, or any of the PCC Settled Insurers under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Asbestos PI Trust or with respect to contributions to the Asbestos PI Trust including, but not limited to, reports that would be required if Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers were determined to be "applicable plans" for purposes of MMSEA, or any of Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers were otherwise found to have MMSEA reporting requirements. The Asbestos PI Trust, in its role as reporting agent for Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "CMS") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(b) If the Asbestos PI Trust is required to act as a reporting agent for Reorganized PCC, PPG, Corning, the PPG Participating Insurers, or the PCC Settled Insurers pursuant to the provisions of Section 2.4(a) above, the Asbestos PI Trust shall provide a written certification to each of Reorganized PCC, PPG, Corning, the PPG Participating Insurers and the PCC Settled Insurers within ten (10) days following the end of each calendar

quarter, confirming that all reports to CMS required by Section 2.4(a) have been submitted in a timely fashion, and identifying (i) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance, and (ii) any payments to Medicare benefits recipients or Medicare-eligible beneficiaries that the Asbestos PI Trust did not report to CMS.

(c) With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Asbestos PI Trust shall, upon request by Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers, or any of the PCC Settled Insurers, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; provided, however, that the Asbestos PI Trust may redact from such copies the names, social security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties, claimants, guardians, conservators and/or other personal representatives, as applicable.

(d) If the Asbestos PI Trust is required to act as a reporting agent for Reorganized PCC, PPG, Corning, the PPG Participating Insurers, or the PCC Settled Insurers pursuant to the provisions of Section 2.4(a) above, with respect to each claim of a Medicare benefits recipient or Medicare-eligible beneficiary that was paid by the Asbestos PI Trust and not disclosed to CMS, the Asbestos PI Trust shall, upon request by Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers, or any of the PCC Settled Insurers, promptly provide the last four digits of the claimant's social security number, the year of the claimant's birth, the claimants' asbestos-related disease, and any other information that may be necessary in the reasonable judgment of Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers or the PCC Settled Insurers to satisfy their obligations, if any, under MMSEA, as well as the basis for the Asbestos PI Trust's failure to report the payment. In the event Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers, or any of the PCC Settled Insurers inform the Asbestos PI Trust that it disagrees with the Asbestos PI Trust's decision not to report a claim paid by the Asbestos PI Trust, the Asbestos PI Trust shall promptly report the payment to CMS. All documentation relied upon by the Asbestos PI Trust in making a determination that a payment did not have to be reported to CMS shall be maintained for a minimum of six years following such determination.

(e) If the Asbestos PI Trust is required to act as a reporting agent for Reorganized PCC, PPG, Corning, the PPG Participating Insurers, or the PCC Settled Insurers pursuant to the provisions of Section 2.4(a) above, the Asbestos PI Trust shall make the reports and provide the certifications required by Sections 2.4(a) and (b) above until such time as each of Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers all determine, in their reasonable judgment, that they have no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Asbestos PI Trust or contributions to the Asbestos PI Trust. Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in section 2.4(a) above, and if Reorganized PCC, PPG, Corning, any

of the PPG Participating Insurers, or any of the PCC Settled Insurers reasonably determine, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Asbestos PI Trust shall promptly perform its obligations under Sections 2.4(a) and (b).

(f) Section 2.4(a) above is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that Reorganized PCC, PPG, Corning, the PPG Participating Insurers, or the PCC Settled Insurers are in fact "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Asbestos PI Trust or contributions to the Asbestos PI Trust under MMSEA or any other statute or regulation.

(g) In the event that CMS concludes that reporting done by the Asbestos PI Trust in accordance with Section 2.4(a) above is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Asbestos PI Trust, Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers, or any of the PCC Settled Insurers a concern with respect to the sufficiency or timeliness of such reporting, or there appears to Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers, or any of the PCC Settled Insurers a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to Section 2.4(b), (c) or (d) or other credible information, then each of Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers shall have the right to submit its own reports to CMS under MMSEA, and the Asbestos PI Trust shall provide to any party that elects to file its own reports such information as the electing party may require in order to comply with MMSEA, including, without limitation, the full reports filed by the Asbestos PI Trust pursuant to Section 2.4(a) without any redactions. Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers shall keep any information they receive from the Asbestos PI Trust pursuant to this Section 2.4(g) confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

(h) Notwithstanding any other provisions hereof, if the Asbestos PI Trust is required to act as a reporting agent for Reorganized PCC, PPG, Corning, the PPG Participating Insurers, or the PCC Settled Insurers, then such entities shall take all steps necessary and appropriate as required by CMS to permit any reports contemplated by this section to be filed. Furthermore, until Reorganized PCC, PPG, Corning, the PPG Participating Insurers, or the PCC Settled Insurers provide the Asbestos PI Trust with any necessary information that may be provided by CMS's Coordination of Benefits Contractor (the "COBC") to effectuate reporting, the Asbestos PI Trust shall have no obligation to report under section 2.4(a) with respect to any such entity that has not provided such information.

(i) Compliance with the provisions of this Section 2.4 shall be a material obligation of the Asbestos PI Trust in favor of the PPG Entities and the PPG Participating Insurer Entities under Section II.K. of the PPG Trust Funding Agreement and in favor of the

Corning Entities, Corning Affiliates and the Corning Affiliated Parties under Section III.H.(5) of the Corning Trust Funding Agreement, and shall also be deemed a material obligation in favor of the PCC Settled Insurers under the PCC Settlement Agreements.

2.  Add the following as a new Section 2.5 to the Asbestos PI Trust Agreement:

**2.5  Payment of MSP Obligations**

(a)  In connection with the implementation of the Plan, the Trustees shall obtain prior to remittance of funds to claimants' counsel or the claimant, if pro se, in respect of any Channeled Asbestos PI Trust Claim a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Channeled Asbestos PI Trust Claim. The Asbestos PI Trust shall provide a quarterly certification of its compliance with this section to each of Reorganized PCC, PPG, Corning, the PPG Participating Insurers, and the PCC Settled Insurers, and permit reasonable audits by such entities, no more often than quarterly, to confirm the Asbestos PI Trust's compliance with this section. For the avoidance of doubt, the Asbestos PI Trust shall be obligated to comply with the requirements of this section regardless of whether Reorganized PCC, PPG, Corning, any of the PPG Participating Insurers, or any of the PCC Settled Insurers elects to file its own reports under MMSEA pursuant to section 2.4(g) above.

(b)  Compliance with the provisions of this section 2.5 shall be a material obligation of the Asbestos PI Trust in favor of the PPG Entities and the PPG Participating Insurer Entities under Section II.K. of the PPG Trust Funding Agreement and in favor of the Corning Entities, Corning Affiliates and the Corning Affiliated Parties under Section III.H.(5) of the Corning Trust Funding Agreement, and shall also be deemed a material obligation in favor of the PCC Settled Insurers under the PCC Settlement Agreements.

3.  Add the following as a new Section 2.6 to the Asbestos PI Trust Agreement:

**2.6  Indemnification for Medicare Claims Reporting and Payment Obligations**

For the avoidance of doubt, any claims in respect of Medicare claims reporting and payment obligations in connection with Channeled Asbestos PI Trust Claims, including any obligations owing or potentially owing under MMSEA or 42 U.S.C. § 1395y(b) or any related rules, regulations, or guidance issued in connection therewith, or relating thereto, and any claims arising from or related to the Asbestos PI Trust's obligations under sections 2.4 and 2.5 above, are Plan Participation Claims subject to the defense and indemnification obligations contained in section 11.7.2 of the Plan.

4.  Add the words "Except as otherwise provided in Section 7.3(b) below," to the beginning of the existing Section 7.3 of the Asbestos PI Trust Agreement, and make it into Section 7.3(a).

5.    Add the following as a new Section 7.3(b):

      (b)  Sections 2.4 and 2.5 of this Asbestos PI Trust Agreement may not be amended
      without the prior written consent of PPG, Corning, the PPG Participating Insurers, and
      the PCC Settled Insurers.

6.    Amend the contact information for PPG Industries, Inc. in 7.5 as follows:

      Glenn E. Bost II, Esq.
      Senior Vice President and General Counsel
      David C. Gallagher, Esq.
      Corporate Counsel
      Enterprise Litigation and Insurance
      PPG Industries, Inc.
      One PPG Place, 39th Floor
      Pittsburgh, Pennsylvania 15272
      &
      Peter J. Kalis, Esq.
      Donald E. Seymour, Esq.
      David F. McGonigle, Esq.
      K&L Gates LLP
      K&L Gates Center
      210 Sixth Avenue
      Pittsburgh, Pennsylvania 15222-2613

TRUST FUNDING AGREEMENT IN CONNECTION WITH THE
PITTSBURGH CORNING CORPORATION PLAN OF REORGANIZATION,
AMONG PPG INDUSTRIES, INC., ITS PARTICIPATING INSURERS,
THE OFFICIAL COMMITTEE OF UNSECURED ASBESTOS CREDITORS, AND
LAWRENCE FITZPATRICK, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS

This Agreement is entered into by and between the parties signing below, as of January 29, 2009.

In consideration of the mutual covenants and promises contained herein, and for other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned parties agree as follows:

## I.  Definitions

For purposes of this Agreement only, the following terms shall have the following definitions:

F.  "Asbestos Permanent Channeling Injunction" means an order or orders of the Bankruptcy Court and/or the District Court issued pursuant to section 524(g) of the Bankruptcy Code, and any other powers that the Bankruptcy Court or the District Court possess, including but not limited to those powers granted under sections 1123(b)(3), 1123(b)(6), or 1129(a)(11) of the Bankruptcy Code, permanently and forever staying, restraining, and enjoining any Entity from taking any action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Channeled Asbestos PI Trust Claim from and against any Asbestos Protected Party (all of which shall be channeled to the Asbestos PI Trust for resolution and payment), including but not limited to:

(1)  commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party or any property or interests in property of any Asbestos Protected Party;

(2)  enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party or any property or interests in property of any Asbestos Protected Party;

(3)  creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance against any Asbestos Protected Party or any property or interests in property of any Asbestos Protected Party;

(4)  seeking setoff, reimbursement, indemnification or contribution from, or subrogation against, any Asbestos Protected Party or otherwise setting off or recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party; and

(5)  proceeding in any manner adverse to any Asbestos Protected Party or the property of any Asbestos Protected Party in any place with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust, except in conformity and compliance therewith.

The Asbestos Permanent Channeling Injunction shall NOT apply to any Non-Derivative PPG/Corning Claim.

G.  "Asbestos Personal Injury Claims" shall mean any past, present, or future Claim, right, remedy, liability or Demand made or brought or that could be made or brought against:

(1) any PPG Entities; or

(2) any Participating Insurer Entities (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law),

under any statute or theory of law, equity, admiralty or otherwise, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship, arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos containing products or materials (including without limitation (i) such Claims or Demands arising in whole or in part out of any actual or alleged relationship on the part of the PPG Entities with Pittsburgh Corning or (ii) such Claims or Demands that are allegedly covered by shared insurance policies covering both the PPG Policyholder Companies and Pittsburgh Corning or policies covering either of them), which seek damages of any kind (including but not limited to punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable or mandatory relief, under any statute or theory of law, equity, admiralty or otherwise, *provided, however*, that this definition shall not include (i) any PPG Asbestos Premises Claims or (ii) any Workers Compensation Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

    I.    "Asbestos Protected Party" means all of the following parties:

(1) Pittsburgh Corning and the Reorganized PCC;

(2) the PPG Entities, the PPG Affiliates and the PPG Affiliated Parties, with respect to Asbestos PI Trust Claims that arise, in whole or in part, out of exposure to:

    (a)    Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by Pittsburgh Corning, or asbestos on or emanating from any Pittsburgh Corning premises; or

    (b)    any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on Pittsburgh Corning by reason of any of the PPG Entities', the PPG Affiliates', the PPG-Affiliated Parties' or the Participating Insurer Entities': (i) ownership of a financial interest in Pittsburgh Corning; (ii) involvement in the management of Pittsburgh Corning, or service as an officer, director or employee of Pittsburgh Corning or a related party; (iii) provision of insurance to Pittsburgh Corning or a related party; or (iv) involvement in a financial transaction affecting the financial condition of Pittsburgh Corning or a related party;

(3) the Participating Insurer Entities, in their capacity as such and/or as issuers of the Participating Insurance Policies or policies issued to or covering Pittsburgh Corning; and

(4) any Entity that qualifies as an "Asbestos Protected Party" as defined in the Plan.

    L.    "Asbestos PI Trust Claims" means all Asbestos Personal Injury Claims, all Indirect Asbestos Claims, and all Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

    DD.    "Indirect Asbestos Claims" means any past, present or future Claim, right, remedy, liability or Demand made or brought or that could be made or brought against:

(1) any PPG Entities; or

(2) any Participating Insurer Entities (including without limitation Claims or Demands brought against a Participating Insurer pursuant to a direct action statute or similar theory of law),

under any statute or theory of law, equity, admiralty, or otherwise, for contribution, reimbursement, subrogation, guaranty, payment or indemnity, or insurance coverage on account of liability incurred, or that may be in the future incurred, in an action in which the claimant has been, is, or may be a defendant in such action containing a Claim or Demand for damages of any kind (including but not limited to punitive damages or exemplary damages), costs, expenses, or other remedies, including legal, equitable, statutory or mandatory relief, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos containing products or materials, except for any liability based on PPG Asbestos Premises Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

FF.    "Insurance Practices Claims" shall mean all past, present or future Claims or Demands that (i) allege unfair competition, unfair or deceptive claims handling or trade practices, insurer bad faith, conspiracy, failure to disclose information, or any similar theory of law, arising out of or based on or attributable to the handling of any asbestos-related claim against the PPG Entities or Pittsburgh Corning or (ii) seek recovery or relief from any of the Participating Insurers (or any past or present corporate parent, subsidiary, predecessor or Affiliate of any Participating Insurer), in its capacity as an insurer of any of the PPG Entities or Pittsburgh Corning, or any of their respective past or present officers, directors, employees, agents, representatives and attorneys, or the successors of any of them, in their capacity as such, arising out of or based on or attributable to, in whole or in part, asbestos or asbestos-related claims. Notwithstanding the foregoing, any claim that meets the definition of Asbestos Personal Injury Claims, Indirect Asbestos Claims, PPG Asbestos Premises Claims or Asbestos Property Damage Claims is excluded from this definition of Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

GG.    "Non-Derivative PPG/Corning Claim" shall mean a non-derivative, independent Claim against a PPG Entity, PPG Affiliate or PPG-Affiliated Party alleging exposure to Pyrocal (or any other PPG product) that is wholly unrelated to Pittsburgh Corning. For the avoidance of doubt, a Non-Derivative PPG/Corning Claim is any Claim against the foregoing Entities that does not involve Unibestos or other asbestos or asbestos-containing product manufactured, sold, and/or distributed by Pittsburgh Corning, or asbestos on or emanating from any Pittsburgh Corning premises, unless such Claim is a PCC Conspiracy Theory Claim or by pleading, evidence, proof, allegation, proffer of evidence or otherwise involves Pittsburgh Corning or its conduct as the basis for liability of one of the foregoing Entities.

SS.    "PCC Conspiracy Theory Claim" shall mean a Claim in which PPG is alleged to be liable with Pittsburgh Corning based on allegations of conspiracy, alter ego, piercing the corporate veil, domination and control, concert of action, common enterprise, aiding and abetting, respondeat superior, negligent provision of services, principal and agent, successor in interest, and other joint and/or several liability theories.

## III.   Contributions to the Asbestos PI Trust

   If each of the conditions in Section II is either satisfied or waived by the party (or parties) as to which such conditions are applicable, then PPG and the Participating Insurers shall make the following contributions to the Asbestos PI Trust.

### A.   PPG's Contributions to the Asbestos PI Trust

   ~~6.   In consideration of PPG's agreement to the terms and conditions of Section 11.9(a) of the Plan, PPG's agreement to make its contributions to the Asbestos PI Trust, and the benefits provided to PPG pursuant to the Plan, PPG, the ACC and the Future Claimants' Representative agree that if:~~

   ~~a.   an action is brought against a Participating Insurer, Corning Protected Insurer or against the Asbestos PI Trust by a PPG Non-Participating Insurer for contribution, indemnity, reimbursement, or similar claims over with respect to PPG's claim against such PPG Non-Participating Insurer for recovery of the PPG Trust Contribution ("PPG Trust Contribution Recovery") (hereinafter referred to as the "Action");~~

   ~~b.   the Participating Insurer(s) and/or Corning Protected Insurer(s) tender the defense of the Action to the Asbestos PI Trust or the Asbestos PI Trust is sued directly in the Action pursuant to the provisions of the Asbestos Permanent Channeling Injunction and the Plan;~~

   ~~c.   the Asbestos PI Trust accepts the defense of the Action pursuant to the Plan; and~~

   ~~d.   the Participating Insurers' or Corning Protected Insurers' allocable share of any judgment on the PPG Trust Contribution Recovery has not been reduced pursuant to Section 11.9(a) of the Plan,~~

   ~~then PPG will indemnify the Asbestos PI Trust for the Participating Insurers' or Corning Protected Insurers' allocable share of any judgment on the PPG Trust Contribution Recovery that is entered in the Action, provided, however, that PPG's obligation hereunder is limited to the amount that PPG recovered from the PPG Non-Participating Insurer(s) that prosecuted the Action.~~

## SCHEDULE F

PPG Industries, Inc.

~~James C~~Glenn E. ~~Diggs~~Bost II, Esq.
Senior Vice President and General Counsel
David C. Gallagher, Esq.
~~Senior~~Corporate Counsel
Enterprise Litigation and Insurance
PPG Industries, Inc.
One PPG Place, 39th Floor
Pittsburgh, Pennsylvania  15272
&
Peter J. Kalis, Esq.
Donald E. Seymour, Esq.
David F. McGonigle, Esq.
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613

| | |
|---|---|
| Columbia Casualty Company | ~~Vice President of Environmental and Mass Tort Claims~~ |
| | Director, Asbestos Claims |
| | Resolute Management Inc., Midwest Division as Administrator on behalf of CNA |
| | ~~CNA Plaza~~333 South Wabash - 19 South |
| | Chicago, IL, ~~Illinois  60685~~60604 |
| | & |
| | ~~General Counsel of the CNA Insurance Companies~~ |
| | ~~CNA Plaza - 25 South~~ |
| | ~~Chicago, Illinois  60685~~ |
| | & |
| | Rodney L. Eshelman, Esq. |
| | Carroll Burdick & McDonough LLP |
| | 44 Montgomery Street |
| | San Francisco, CA  94104 |
| | (415) 989-5900 (tel.) |
| | (415) 989-0932 (facs.) |
| The Continental Insurance Company | ~~Vice President of Environmental and Mass Tort Claims~~ |
| | Director, Asbestos Claims |
| | Resolute Management Inc., Midwest Division as Administrator on behalf of CNA |
| | ~~CNA Plaza~~333 South Wabash - 19 South |
| | Chicago, IL, ~~Illinois  60685~~60604 |
| | & |
| | ~~General Counsel of the CNA Insurance Companies~~ |
| | ~~CNA Plaza - 25 South~~ |
| | ~~Chicago, Illinois  60685~~ |
| | & |
| | Rodney L. Eshelman, Esq. |
| | Carroll Burdick & McDonough LLP |
| | 44 Montgomery Street |
| | San Francisco, CA  94104 |
| | (415) 989-5900 (tel.) |
| | (415) 989-0932 (facs.) |
| Continental Casualty Company | ~~Vice President of Environmental and Mass Tort Claims~~ |
| | Director, Asbestos Claims |
| | Resolute Management Inc., Midwest Division as Administrator on behalf of CNA |
| | ~~CNA Plaza~~333 South Wabash - 19 South |
| | Chicago, IL, ~~Illinois  60685~~60604 |
| | & |
| | ~~General Counsel of the CNA Insurance Companies~~ |
| | ~~CNA Plaza - 25 South~~ |
| | ~~Chicago, Illinois  60685~~ |
| | & |
| | Rodney L. Eshelman, Esq. |
| | Carroll Burdick & McDonough LLP |
| | 44 Montgomery Street |
| | San Francisco, CA  94104 |
| | (415) 989-5900 (tel.) |
| | (415) 989-0932 (facs.) |

The Continental Insurance Company,
as successor in interest to Harbor Insurance Company

~~Vice President of Environmental and Mass Tort Claims~~
Director, Asbestos Claims
Resolute Management Inc., Midwest Division as Administrator on behalf of CNA
~~CNA Plaza~~333 South Wabash - 19 South
Chicago, IL, ~~Illinois  60685~~60604
&
~~General Counsel of the CNA Insurance Companies~~
~~CNA Plaza - 25 South~~
~~Chicago, Illinois  60685~~
~~&~~
Rodney L. Eshelman, Esq.
Carroll Burdick & McDonough LLP
44 Montgomery Street
San Francisco, CA  94104
(415) 989-5900 (tel.)
(415) 989-0932 (facs.)

CNA Reinsurance Company Limited

Director, Asbestos Claims
Resolute Management Inc., Midwest Division as Administrator on behalf of CNA
~~CNA Re Chief Financial Officer~~
~~CNA Re~~
333 South Wabash - 19 South
~~39th Floor~~
Chicago, IL, ~~Illinois  60604~~
~~(312) 822-6440 (tel.)~~
&
Rodney L. Eshelman, Esq.
Carroll Burdick & McDonough LLP
44 Montgomery Street
San Francisco, CA  94104
(415) 989-5900 (tel.)
(415) 989-0932 (facs.)

Hartford  Accident and Indemnity Company

Frederick W. Zwick
Assistant Vice President
Complex Claims Group
The Hartford
Hartford Plaza
690 Asylum Avenue
Hartford, CT  06115
(860) 547-8666 (tel.)
(860) 547-8650 (facs.)
fred.zwick@thehartford.com
&
~~William J. Bowman, Esq.~~
James P. Ruggeri
Edward B. Parks
~~Hogan~~Shipman & ~~Hartson, LLP~~Goodwin
~~555 13th Street, N.W.~~
1133 Connecticut Avenue NW
Washington, ~~DC  20006~~District of Columbia 20036-4305
(202) ~~637-6434~~469-7750 (tel.)
(202) ~~637-5910~~469-7751 (facs.)
jruggeri@goodwin.com
~~wjbowman~~eparks@~~hhlaw~~goodwin.com

6

| | |
|---|---|
| First State Insurance Company | Frederick W. Zwick |
| | Assistant Vice President |
| | Complex Claims Group |
| | The Hartford |
| | Hartford Plaza |
| | 690 Asylum Avenue |
| | Hartford, CT 06115 |
| | (860) 547-8666 (tel.) |
| | (860) 547-8650 (facs.) |
| | fred.zwick@thehartford.com |
| | & |
| | ~~William J. Bowman, Esq.~~ |
| | James P. Ruggeri |
| | Edward B. Parks |
| | ~~Hogan~~Shipman & ~~Hartson, LLP~~Goodwin |
| | ~~555 13th Street, N.W.~~ |
| | 1133 Connecticut Avenue NW |
| | Washington, ~~DC 20006~~District of Columbia |
| | 20036-4305 |
| | (202) ~~637469-6434~~7750 (tel.) |
| | (202) ~~637469-5910~~7751 (facs.) |
| | jruggeri@goodwin.com |
| | ~~wjbowman~~eparks@~~hhlaw~~goodwin.com |
| Twin City Fire Insurance Company | Frederick W. Zwick |
| | Assistant Vice President |
| | Complex Claims Group |
| | The Hartford |
| | Hartford Plaza |
| | 690 Asylum Avenue |
| | Hartford, CT 06115 |
| | (860) 547-8666 (tel.) |
| | (860) 547-8650 (facs.) |
| | fred.zwick@thehartford.com |
| | & |
| | ~~William J. Bowman, Esq.~~ |
| | James P. Ruggeri |
| | Edward B. Parks |
| | ~~Hogan~~Shipman & ~~Hartson, LLP~~Goodwin |
| | ~~555 13th Street, N.W.~~ |
| | 1133 Connecticut Avenue NW |
| | Washington, ~~DC 20006~~District of Columbia |
| | 20036-4305 |
| | (202) ~~637469-6434~~7750 (tel.) |
| | (202) ~~637469-5910~~7751 (facs.) |
| | jruggeri@goodwin.com |
| | ~~wjbowman~~eparks@~~hhlaw~~goodwin.com |
| Hudson Insurance Company | Gerard J. Marquart |
| | Vice President |
| | Hudson Insurance Company |
| | 300 First Stamford Place |
| | Stamford, CT 06902 |
| | (203) 940-8120 (tel.) |
| | (203) 348-4375 (facs.) |
| | gmarquart@odysseyre.com |
| | & |
| | David Ross, Esq. |
| | Wilson Elser Moskowitz Edelman & Dicker LLP |
| | 700 11th Street, NW, Suite 400 |
| | Washington, D.C. 20001 |
| | ~~Dewey & LeBoeuf LLP~~ |
| | ~~1101 New York Avenue, NW~~ |
| | ~~Washington, DC 20005~~ |
| | (202) ~~346626-8719~~7687 (tel.) |
| | (202) ~~956628-3239~~3606 (facs.) |
| | david.ross@wilsonelser.com~~&~~ |
| | ~~Gerard J. Marquart~~ |
| | ~~Vice President~~ |
| | ~~Hudson Insurance Company~~ |
| | ~~300 First Stamford Place~~ |
| | ~~Stamford, CT 06902~~ |

## SCHEDULE L

## TO THE TRUST FUNDING AGREEMENT IN CONNECTION WITH THE PITTSBURGH CORNING CORPORATION PLAN OF REORGANIZATION, AMONG PPG INDUSTRIES, INC., ITS PARTICIPATING INSURERS, THE OFFICIAL COMMITTEE OF UNSECURED ASBESTOS CREDITORS, AND LAWRENCE FITZPATRICK, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS

PITTSBURGH CORNING CORPORATION ASBESTOS PERSONAL INJURY TRUST

RELEASE AND INDEMNITY AGREEMENT

### EXHIBIT 1
### DEFINED TERMS

**Asbestos Claims**

All Asbestos Personal Injury Claims, Indirect Asbestos Claims and PCC/PPG Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Asbestos Personal Injury Claim**

Any past, present, or future Claim, right, remedy, liability, or Demand made or brought or that could be made or brought against:

(a) the Debtor, Reorganized PCC and/or the PCC-Affiliated Parties;

(b) PCE;

(c) any PPG Entities and/or any PPG-Affiliated Party (including any liabilities retained or assumed by the PPG Entities arising from, based upon, or attributable to Asbestos Personal Injury Claims);

(d) any PPG Participating Insurer Entities in their capacity as such, and/or as issuers of the PPG Participating Insurance Policies and policies issued to or covering the Debtor (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

(e) any Corning Entities and/or any Corning-Affiliated Parties (including any liabilities retained or assumed by the Corning Entities arising from, based upon, or attributable to Asbestos Personal Injury Claims);

(f) any Corning Protected Insurers, in their capacity as issuers of the Corning Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law); or

(g) any PCC Settled Insurers, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

under any statute or theory of law, equity, admiralty or otherwise, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship, arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos containing products or materials (including without limitation (i) such Claims or Demands arising in whole or in part out of any actual or alleged relationship on the part of either the PPG Entities or the Corning Entities with the Debtor or (ii) such Claims or Demands that are allegedly covered by (a) shared insurance policies covering both the PPG Policyholder Companies and the Debtor or policies covering either of them, or (b) shared insurance policies covering both the Corning Policyholder Companies and the Debtor or policies covering either of them), which seek damages of any kind (including but not limited to punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable or mandatory relief, under any statute or theory of law, equity, admiralty or otherwise; provided, however, that this definition shall not include (i) any PPG Asbestos Premises Claims as to the PPG Entities; (ii) any Corning Asbestos Premises Claims as to the Corning Entities; or (iii) any Workers Compensation Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Asbestos Protected Party**

Any of the following Entities:

(a) the Debtor, Reorganized PCC and/or the PCC-Affiliated Parties;

(b) the PPG Entities, the PPG Affiliates and the PPG-Affiliated Parties, with respect to Asbestos PI Trust Claims that arise, in whole or in part, out of exposure to:

(1) Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises; or

(2) any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on the Debtor by reason of any of the PPG Entities', the PPG Affiliates', the PPG-Affiliated Parties' or the PPG Participating Insurer Entities': (i) ownership of a financial interest in the Debtor; (ii) involvement in the management of the Debtor, or service as an officer, director or employee of the Debtor or a related party; (iii) provision of insurance to the Debtor or a related party; or (iv) involvement in a financial transaction affecting the financial condition of the Debtor or a related party;

(c) the PPG Participating Insurer Entities, in their capacity as such and/or as issuers of PPG Participating Insurance Policies and policies issued to or covering the Debtor;

(d) the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties and the Corning Protected Insurers, in their capacity as such and/or as issuers of the Corning Insurance Policies, with respect to Asbestos PI Trust Claims that arise, in whole or in part, out of exposure to:

(1) Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by the Debtor, or asbestos on or emanating from any Pittsburgh Corning premises; or

(2)   any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on the Debtor by reason of any of the Corning Entities', the Corning Affiliates', the Corning-Affiliated Parties' or the Corning Insurers': (i) ownership of a financial interest in the Debtor; (ii) involvement in the management of the Debtor, or service as an officer, director or employee of the Debtor or a related party; (iii) provision of insurance to the Debtor or a related party; or (iv) involvement in a financial transaction affecting the financial condition of the Debtor or a related party;

(e) without limiting any protection afforded by subsection (c) above, and for the avoidance of doubt, the PCC Settled Insurers, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies;

(f) any Entity (and any past, present, or future corporate parent, subsidiary, predecessor, Affiliate, officer, director, employee, consultant, attorney, accountant, advisor, administrator, representative or agent of any such Entity, in his, her or its capacity as such) that, pursuant to the Plan or after the Effective Date, becomes a direct or an indirect transferee of, or successor to, (i) any of the Entities identified in subparagraphs (a) – (e) above, (ii) the Asbestos PI Trust or (iii) the assets or stock of any of the parties referenced in clauses (i) or (ii) hereof (but only to the extent that liability is asserted to exist by reason of its becoming such transferee or successor);

(g) any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to any of the Entities identified in subparagraphs (a) – (e) above (but only to the extent that liability is asserted to exist by reason of such Entity's becoming such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired);

(h) any Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtor, Reorganized PCC, or the Asbestos PI Trust on account of Asbestos PI Trust Claims by reason of one or more of the following:

(1) such Entity's involvement in the management of the Debtor, Reorganized PCC or an Affiliate of the Debtor or any predecessor in interest of the Debtor, Reorganized PCC, or an Affiliate of the Debtor, including PPG and Corning;

(2) such Entity's ownership of a financial interest in the Debtor, Reorganized PCC, or a past or present Affiliate of the Debtor, or any predecessor in interest of the Debtor, Reorganized PCC, or an Affiliate of the Debtor, including PPG and Corning;

(3) such Entity's service as an officer, director, or employee of the Debtor, Reorganized PCC, or predecessor in interest and/or Affiliate of the Debtor, including PPG and Corning;

(4) such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition of the Debtor, Reorganized PCC, or a predecessor in interest and/or Affiliate of the Debtor, including PPG and Corning.

The Corning Parties and the Corning Insurers are not Asbestos Protected Parties among themselves with respect to Reserved Claims.

**Channeled Asbestos PI Trust Claim**

Any Asbestos PI Trust Claim against an Asbestos Protected Party. ~~For the avoidance of doubt,~~ Channeled Asbestos PI Trust Claims do not include <u>any</u> Reserved Claims~~.~~ <u>nor any Non-Derivative PPG/Corning Claims. The fact that a person has asserted, or in the future asserts against the Asbestos PI Trust, a Channeled Asbestos PI Trust Claim will not by itself cause any other claim held by that person to become channeled if the other claim does not otherwise fall within the definition of Channeled Asbestos PI Trust Claim.</u>

<u>Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."</u>

## <u>Corning Parties</u>

<u>Any of the Corning Entities, Corning Affiliates and/or Corning-Affiliated Parties. The definition of "Corning Parties" does not include PCE.</u>

### Indirect Asbestos Claim

Any past, present or future Claim, right, remedy, liability or Demand made or brought or that could be made or brought against:

      (a)  the Debtor, Reorganized PCC and/or the PCC-Affiliated Parties;

      (b)  PCE;

      (c)  any PPG Entities and/or any PPG-Affiliated Parties (including any liabilities retained or assumed by the PPG Entities arising from, based upon, or attributable to Indirect Asbestos Claims);

      (d)  any PPG Participating Insurer Entities in their capacity as such, and/or as issuers of the PPG Participating Insurance Policies and policies issued to or covering the Debtor (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

      (e)  any Corning Entities and/or any Corning-Affiliated Parties (including any liabilities retained or assumed by the Corning Entities arising from, based upon, or attributable to Indirect Asbestos Claims);

      (f)  any Corning Protected Insurers, in their capacity as such and/or as issuers of the Corning Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law); or

      (g)  any PCC Settled Insurers, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

under any statute or theory of law, equity, admiralty, or otherwise, for contribution, reimbursement, subrogation, guaranty, payment or indemnity, or insurance coverage on account of liability incurred in an action in which the claimant has been or is a defendant in such action containing a Claim or Demand for damages of any kind (including, but not limited to, punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable, statutory or mandatory relief, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos

containing products or materials, except for: (i) any liability based on PPG Asbestos Premises Claims as to the PPG Entities; or (ii) any liability based on Corning Asbestos Premises Claims as to the Corning Entities.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

## Non-Derivative PPG/Corning Claim

A non-derivative, independent Claim against a PPG Entity, PPG Affiliate, PPG-Affiliated Party, Corning Entity, Corning Affiliate, or Corning-Affiliated Party or Corning Protected Insurer alleging exposure to Pyrocal (or any other PPG product) or to Corhart spacers (or any Corning product) that is wholly unrelated to the Debtor. For the avoidance of doubt, a Non-Derivative PPG/Corning Claim is any Claim against the foregoing Entities that does not involve Unibestos or other asbestos or asbestos-containing product manufactured, sold, and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises, unless such Claim is a PCC Conspiracy Theory Claim or by pleading, evidence, proof, allegation, proffer of evidence or otherwise involves PCC or its conduct as the basis for liability of one of the foregoing Entities.

## PCC Conspiracy Theory Claim

A Claim in which PPG or Corning is alleged to be liable with PCC based on allegations of conspiracy, alter ego, piercing the corporate veil, domination and control, concert of action, common enterprise, aiding and abetting, respondeat superior, negligent provision of services, principal and agent, successor in interest, and other joint and/or several liability theories.

## PCC/PPG Insurance Practices Claims

All past, present or future Claims or Demands that (i) allege unfair competition, unfair or deceptive claims handling or trade practices, insurer bad faith, conspiracy, failure to disclose information, or any similar theory of law, arising out of or based on or attributable to the handling of any asbestos-related claim against the PPG Entities or the Debtor or (ii) seek recovery or relief from any of the PCC Settled Insurers or PPG Participating Insurers (or any past or present corporate parent, subsidiary, predecessor or Affiliate of any PCC Settled Insurer or PPG Participating Insurer) in its capacity as an insurer of any of the PPG Entities or the Debtor, or any of their respective past or present officers, directors, employees, agents, representatives and attorneys, or the successors of any of them, in their capacity as such, arising out of or based on or attributable to, in whole or in part, asbestos or asbestos-related claims. Notwithstanding the foregoing, any claim that meets the definition of Asbestos Personal Injury Claims, Indirect Asbestos Claims, PPG Asbestos Premises Claims, Corning Asbestos Premises Claims, or Asbestos Property Damage Claims is excluded from this definition of PCC/PPG Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

## Reserved Claims

Any past, present or future claims, rights, remedies, liabilities, demands, defenses and/or causes of action by any of the Corning Parties, and/or their insurers (in their capacity as insurers of the Corning Parties) in connection with the Corning Insurance Policies and/or the Other Corning Policies including, but not limited to, any claims or demands for defense, indemnity, contribution, bad-faith, breach of contract, reimbursement, Corning Trust Contribution Recovery Claims and/or extra-contractual remedies. Reserved Claims shall not include any claims for contribution, indemnity, reimbursement, equitable subrogation, or

similar claims-over by a Corning Non-Protected Insurer against a Corning Protected Insurer in connection with Corning Trust Contribution Recovery Claims.

~~Reserved Claims shall have the meaning ascribed to it in Section 11.13.1 of this Plan.~~

**Exhibit I to**
**Modified Third Amended**
**Plan of Reorganization**

**THIRD AMENDED AND RESTATED TRUST FUNDING AGREEMENT AMONG CORNING INCORPORATED, LAWRENCE FITZPATRICK (FUTURE CLAIMANTS' REPRESENTATIVE), AND THE TRUSTEES OF THE ASBESTOS PI TRUST, IN CONNECTION WITH THE MODIFIED THIRD AMENDED PLAN OF REORGANIZATION FOR PITTSBURGH CORNING CORPORATION**

This Third Amended and Restated Trust Funding Agreement Among Corning Incorporated, Lawrence Fitzpatrick (Future Claimants' Representative), and the Trustees of the Asbestos PI Trust, In Connection With the Modified Third Amended Plan of Reorganization for Pittsburgh Corning Corporation ("Agreement") is entered into by and among the parties signing below, as of ____, 2010~~2011~~.

In consideration of the mutual covenants and promises contained herein, and for other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned parties agree as follows:

### I.    Definitions

Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Modified Third Amended Plan of Reorganization For Pittsburgh Corning Corporation, Dated January 29, 2009 Jointly Proposed By Pittsburgh Corning Corporation The Official Committee of Asbestos Creditors and the Future Claimants' Representative either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, subject to the provisions of Article 7.1 of such plan, and the annexes, schedules, and exhibits thereto (the "Plan").

For purposes of this Agreement only, the following terms shall have the following definitions:

"ACC" means the official Committee of Unsecured Asbestos Creditors appointed by the U.S. Trustee in the Pittsburgh Corning Chapter 11 case pursuant to section 1102 of the Bankruptcy Code.

"Corning Entities" are Corning, the Corning Policyholder Companies, and the Entities identified on Table 1 to Exhibit "K" to the Plan and on Schedule "A" to this Agreement, and the successors of any of them in their capacity as such; *provided, however*, that Corning Entities shall not include the Debtor or PPG.

"Corning Insurance Policies" are the insurance policies identified on Schedule "B" to this Agreement.

"Corning Insurers" are those insurers identified in "Column 1" on Schedule "B" to this Agreement, and the successors of any of them, solely in their capacity as insurers of the Corning Entities, the Corning Affiliates and/or the Corning-Affiliated Parties.

~~"Corning Non-Protected Insurers" are Mt. McKinley Insurance Company, formerly known as Gibraltar Casualty Company, and Everest Reinsurance Company, formerly known as Prudential Reinsurance Company, and the successors of any of them, solely in their capacity as insurers of the Corning Entities, the Corning Affiliates and/or the Corning-Affiliated Parties, and any other Corning Insurer, if any, that is not also a Corning Protected Insurer.~~

"Corning Policyholder Companies" are those Entities identified on Schedule "C" to this Agreement.

"Corning Protected Insurers" are those Entities identified on Schedule "D" to this Agreement, and the successors of any of them, solely in their capacity as insurers of the Corning Entities, the Corning Affiliates and/or the Corning-Affiliated Parties.

"Corning Registration Rights Agreement" means the Corning Registration Rights Agreement attached as Exhibit 3 to this Agreement.

"Corning Trust Contribution" is the contributions to the Asbestos PI Trust made by and/or on behalf of the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties, and/or the Corning Protected Insurers as set forth in Section III of this Agreement.

"Direct Claim" is any claim, demand, right, liability and/or cause of action made and/or brought or that could be made and/or brought against any Corning Entities, Corning Affiliates, and/or Corning-Affiliated Parties under any statute or theory of law, equity, admiralty, or otherwise, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship, arising out of, based on, or attributable to, in whole or in part, exposure to:

> 1. Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises; or
>
> 2. any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on the Debtor by reason of any of the Corning Entities', the Corning Affiliates', the Corning-Affiliated

> Parties' or the Corning Insurers': (i) ownership of a financial interest in the Debtor; (ii) involvement in the management of the Debtor, or service as an officer, director or employee of the Debtor or a related party; (iii) provision of insurance to the Debtor or a related party; or (iv) involvement in a financial transaction affecting the financial condition of the Debtor or a related party;

seeking damages of any kind (including but not limited to punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable, or mandatory relief, under any statute or theory of law, equity, admiralty or otherwise; provided, however, that Direct Claims do not include (i) any Corning Asbestos Premises Claims as to the Corning Entities; (ii) any Workers' Compensation Claims; and (iii) Asbestos Personal Injury Claims to the extent they are resolved and/or paid by the Asbestos PI Trust pursuant to the Asbestos Permanent Channeling Injunction.

"Direct Claim Costs" are all expenses, costs, fees (including attorneys' fees), judgments, awards, settlements, and other liabilities incurred by the Corning Entities, the Corning Affiliates and/or Corning-Affiliated Parties in connection with the defense, indemnity, resolution and/or settlement of Direct Claims.

"Escrow Agreement" means the Escrow Agreement attached as Exhibit 1 to this Agreement.

"Future Direct Claim Costs" are the lesser of (i) five (5) times the amount of Direct Claim Costs incurred by the Corning Entities, Corning Affiliates and/or Corning Affiliated Parties from the Effective Date through ninety days prior to the six year anniversary of the Funding Effective Date; and (ii) $50,000,000.

"Installment" or "Installments" shall have the meaning ascribed to it in Section III.A. of this Agreement.

"Non-Protected Insurer Action" shall have the meaning ascribed to it in Section IV.B.1.a to this Agreement.

"Note" means the form of Note attached to the Note Agreement as Exhibit A thereto.

"Note Agreement" means the Note Agreement attached as Exhibit 2 to this Agreement.

"Other Corning Policies" means any insurance policies that: (a) appear on Schedule E to this Agreement; (b) were purchased by Corning or in which Corning is the named insured as set forth on the declarations page(s); or (c) are not described in (a) or (b) above, but solely to the extent that they provide

-3-

insurance coverage to any of the Corning Entities, the Corning Affiliates and/or the Corning-Affiliated Parties for claims and/or demands other than Channeled Asbestos PI Trust Claims against any such Entities; *provided, however,* that Other Corning Policies do not include: (x) the Corning Insurance Policies; (y) the PCC/PPG Policies (as defined in the Insurance Claims Agreement); or (z) any insurance policy described in (c) above, to the extent that a claim or demand for coverage by the Corning Entities and/or the Corning Affiliates for Asbestos PI Trust Claims is based upon or arises out of the Corning Entities' and/or the Corning Affiliates' claims that they are a shareholder, stockholder or Affiliate of PCC and/or PPG.

"Unpaid Indemnified Costs" shall have the meaning ascribed to it in Section III.H(5) of this Agreement.

## II. Conditions Precedent to Contribution Obligations

Corning shall not be obligated or required to make any contribution to the Asbestos PI Trust under this Agreement, or take any action under this Agreement, until all of the following conditions precedent set forth below in II. (A) through (P) are satisfied or waived by Corning in writing:

A. The Confirmation Order shall be signed or affirmed by the District Court, and shall be, in form and substance, acceptable to the Plan Proponents, PPG, and Corning. The following findings or conclusions shall be contained in the Confirmation Order to be signed or affirmed by the District Court:

1. At the time of the order for relief with respect to the Debtor, the Debtor had been named as a defendant in personal injury, wrongful death, and/or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

2. The Plan establishes in Class 5, a class of persons whose Claims are to be addressed by the Asbestos PI Trust, and Class 5 has voted to approve the Plan in accordance with the requirements of the Bankruptcy Code and applicable case law.

3. The Asbestos PI Trust, as of the Effective Date, will assume the liabilities of the Debtor and the Asbestos Protected Parties with respect to the Channeled Asbestos PI Trust Claims.

4. The sole and exclusive remedy on account of Channeled Asbestos PI Trust Claims shall be against the Asbestos PI Trust, and no such Claims or Demands may be asserted against the Debtor, Reorganized PCC, or any Asbestos Protected Party, directly or indirectly, and should a legal

action based on or arising from any Channeled Asbestos PI Trust Claim be commenced directly against any Asbestos Protected Party, the Asbestos PI Trust shall, upon reasonable notice, execute appropriate legal documents stipulating to the substitution of the Asbestos PI Trust as a party defendant, or should such substitution not be permitted under applicable laws or court rules, the joinder of the Asbestos PI Trust as a party defendant in any federal or state action as permitted by applicable law.

5. The Asbestos PI Trust is to own a majority of the voting shares of Reorganized PCC.

6. The Asbestos PI Trust is to be funded by transfer of insurance proceeds and insurance rights by the Debtor, by securities of Reorganized PCC, and by Dividend Payments to be made by the Debtor in the future, as well as by the PPG Trust Contribution and the Corning Trust Contribution.

7. The Asbestos PI Trust is to use its assets or income to pay asbestos-related Claims or Demands in accordance with the Asbestos PI Trust Distribution Procedures.

8. Each of PPG and Corning have been named in a substantial number of lawsuits alleging that, with respect to asbestos, it was, *inter alia*, engaged in a civil conspiracy or joint enterprise with, or otherwise aided and abetted, the Debtor.

9. The Debtor is likely to be subject to substantial Demands for payment arising out of the same or similar conduct or events that gave rise to the Channeled Asbestos PI Trust Claims that are addressed by the Asbestos Permanent Channeling Injunction.

10. The actual amounts, numbers, and timing of the Demands referenced in Paragraph 9 cannot be determined.

11. Pursuit of the Demands referenced in Paragraph 10 outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and Demands.

12. Pursuant to court orders or otherwise, the Asbestos PI Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, present Claims and Demands that involve similar claims in the same manner.

13. The Future Claimants' Representative was appointed as part of the proceedings leading to issuance of the Asbestos Permanent Channeling Injunction as the legal representative of persons who may have asbestos-related claims against the Debtor, the PPG Entities or the Corning Entities in the future.

14. The identification of each Asbestos Protected Party in the Asbestos Permanent Channeling Injunction is fair and equitable with respect to Entities that might subsequently assert Demands against each such Asbestos Protected Party, in light of the benefits provided, or to be provided, to the Asbestos PI Trust by or on behalf of any such Asbestos Protected Party.

15. The Corning Trust Contribution fully resolves and satisfies the Corning Entities', the Corning Affiliates', and the Corning-Affiliated Parties' alleged and disputed liabilities for the Channeled Asbestos PI Trust Claims, and is fair and equitable to the holders of Channeled Asbestos PI Trust Claims, including, without limitation, the holders of Indirect Asbestos Claims. This finding, however, shall not be binding and shall not have collateral estoppel effect on the Corning Insurers in any coverage litigation regarding the insurance coverage obligations of the Corning Insurers.

16. With respect to the holders of Channeled Asbestos PI Trust Claims, the Corning Trust Contribution is a reasonable contribution to the Asbestos PI Trust in consideration of the relief provided to the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties and the Corning Protected Insurers by the Asbestos Permanent Channeling Injunction, in view of the alleged and disputed liability of Corning for Channeled Asbestos PI Trust Claims. This finding, however, shall not be binding and shall not have collateral estoppel effect on the Corning Insurers in any coverage litigation regarding the insurance coverage obligations of the Corning Insurers.

17. The Future Claimants' Representative has, in the fulfillment of his duties, considered the likelihood, merits, and value of Channeled Asbestos PI Trust Claims against the Corning Entities in combination with the likelihood, merits, and value of such claims against the Debtor.

18. The Asbestos Permanent Channeling Injunction, as applied to Channeled Asbestos PI Trust Claims against the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties and the Corning Protected Insurers is essential and necessary to the Debtor's reorganization because, among other reasons, Corning would not be willing to make the Corning Trust Contribution herein without the protection provided by the Asbestos Permanent Channeling Injunction. This finding, however, shall not be binding and shall not have collateral estoppel effect on the Corning Insurers in any coverage litigation regarding the insurance coverage obligations of the Corning Insurers.

19. The Plan provides a mechanism to resolve all, or substantially all, Channeled Asbestos PI Trust Claims.

20. In view of the substantial contributions to the Asbestos PI Trust being made by or on behalf of the Asbestos Protected Parties, it is reasonable and fair for the Plan to provide that those who accept payment from the Asbestos PI Trust will be deemed to have granted the release set forth in Section 11.8 of the Plan.

21. The Asbestos Permanent Channeling Injunction is authorized by Section 524(g) of the Bankruptcy Code.

22. Pursuant to the Asbestos Permanent Channeling Injunction, the sole and exclusive remedy of holders of Channeled Asbestos PI Trust Claims shall be against the Asbestos PI Trust as set forth in the Plan.

23. The Bankruptcy Court has subject matter jurisdiction to issue the Asbestos Permanent Channeling Injunction.

B. The ACC and Future Claimants' Representative must have supported the entry of a Confirmation Order that contains findings or conclusions materially as follows:

1. Suits against Corning for Claims or Demands relating to asbestos or asbestos-containing products manufactured, distributed, or sold by the Debtor or its Affiliates are inextricably intertwined with suits against the Debtor. This finding, however, shall not be binding and shall not have collateral estoppel effect on the Corning Insurers in any coverage litigation regarding the insurance coverage obligations of the Corning Insurers.

2. The assertion of Claims and Demands against Corning relating to asbestos or asbestos-containing products manufactured, distributed, or sold by the Debtor or its Affiliates, or asbestos-related Claims or Demands for which the Debtor would otherwise share liability with Corning, would give rise, under applicable law, to Demands for contribution, indemnity, or other similar relief by Corning against Reorganized PCC or the Asbestos PI Trust in the absence of protection from the Bankruptcy Court.

3. Suits against the Corning Entities for Claims or Demands relating to asbestos or asbestos-containing products, other than suits against the Corning Entities for Corning Asbestos Premises Claims, could reduce the amount of insurance coverage that would otherwise be available to the Debtor or to the Asbestos PI Trust or the amount of insurance coverage to which the Debtor has asserted a right to

coverage, and therefore there is an identity of interests of the Debtor and Corning in enjoining Channeled Asbestos PI Trust Claims against the Corning Entities. This finding, however, shall not be binding and shall not have collateral estoppel effect on the Corning Insurers in any coverage litigation regarding the insurance coverage obligations of the Corning Insurers.

    4.    The contributions made to the Asbestos PI Trust in accordance with Section III of this Agreement are substantial and are a fundamental component of the Debtor's reorganization. This finding, however, shall not be binding and shall not have collateral estoppel effect on the Corning Insurers in any coverage litigation regarding the insurance coverage obligations of the Corning Insurers.

    C.    The District Court shall have entered or approved the Confirmation Order, and the Confirmation Order shall have become a Final Order.

    D.    There is no stay in effect with respect to the Confirmation Order, and the Confirmation Order, including the Asbestos Permanent Channeling Injunction, shall be in full force and effect; and no appellate court on an appeal described in 11 U.S.C. §524(g)(6) shall have issued any order, opinion or mandate construing or interpreting the Confirmation Order or the jurisdiction of the court issuing or approving the Confirmation Order in any manner materially inconsistent with the description of the Asbestos Permanent Channeling Injunction set forth in the disclosure statement relating to the Plan.

    E.    The Asbestos Permanent Channeling Injunction must expressly provide that the sole and exclusive remedy of holders of Channeled Asbestos PI Trust Claims shall be against the Asbestos PI Trust as set forth in the Plan.

    F.    The Effective Date shall have occurred.

    G.    Corning shall have certified in writing that there has been no alteration, amendment, modification, or Bankruptcy Court or District Court interpretation of the Plan, which in Corning's sole judgment adversely affects the Corning Entities, without Corning's written consent.

    H.    The Plan and the Confirmation Order must be consistent with this Agreement.

    I.    The Insurance Claims Agreement must be executed by the Debtor, PPG and the PPG Participating Insurers in a form acceptable to Corning, and must be approved by Bankruptcy Court in the Confirmation Order, and the Confirmation Order shall have become a Final Order.

    J.    This Agreement must be approved by the Bankruptcy Court and/or District Court in the Confirmation Order.

K.     The Confirmation Order shall have become a Final Order.

L.     Corning must approve, in writing to the Debtor, the ACC, and the Future Claimants' Representative, the form and substance of the Plan, Disclosure Statement, Asbestos PI Trust Agreement, Insurance Claims Agreement, and the Asbestos PI Trust Distribution Procedures, as well as all related documents, Exhibits and Schedules.

M.     Corning must approve, in writing to the Debtor, the ACC, and the Future Claimants' Representative, the inclusion of any and all PCC Insurance Settlement Agreements on Exhibit N.

N.     The Trustees of the Asbestos PI Trust shall have accepted their appointment as Trustees and shall have executed this Agreement, the Asbestos PI Trust Agreement attached as Exhibit A to the Plan, the Escrow Agreement attached hereto as Exhibit 1 and the Corning Registration Rights Agreement attached hereto as Exhibit 3.

O.     The injunction against the prosecution of the pending actions or other asbestos actions against Corning, as originally entered on the Petition Date and as thereafter modified, reinstated, and extended, must remain in effect through the Funding Effective Date.

P.     The Asbestos Permanent Channeling Injunction must enjoin all Channeled Asbestos PI Trust Claims against the Asbestos Protected Parties.

**III.     Contributions to the Asbestos PI Trust**

If each of the conditions in Section II and Section III (H) below is either satisfied or waived in writing by Corning, then Corning shall make the following contributions to the Asbestos PI Trust on behalf of the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties and/or the Corning Protected Insurers:

A.     Corning shall make contributions to the Asbestos PI Trust in the installments set forth in (1-6) below (each an "Installment" and collectively, the "Installments"). These Installments may be made by Corning in cash or, at its sole and exclusive election, by transfer or issuance of the cash equivalent of such Installment in restricted shares of Corning's common stock, the issuance and resale of which shall be subject to the terms and conditions set forth in the Corning Registration Rights Agreement. The number of shares to be issued to the Asbestos PI Trust for any Installment made in shares will be equal to: the Installment amount due on such date divided by the closing price of Corning common stock on the New York Stock Exchange two days prior to the relevant Installment date.

1. On the one year anniversary of the Funding Effective Date: $70,000,000; and

2. On the second year anniversary of the Funding Effective Date: $35,000,000; and

3. On the three year anniversary of the Funding Effective Date: $50,000,000; and

4. On the four year anniversary of the Funding Effective Date: $35,000,000; and

5. On the five year anniversary of the Funding Effective Date: $50,000,000; and

6. On the six year anniversary of the Funding Effective Date: $50,000,000 less:

   (a) any Direct Claim Costs; and

   (b) Future Direct Claim Costs, which will be deposited into an escrow account pursuant to Section III. F. below.

B. On the Funding Effective Date, Corning shall transfer to the Asbestos PI Trust its equity interest in PCE and shall relinquish its equity interest in the Debtor.

C. Corning's payment obligations consistent with this Agreement are subject to: (1) the Note Agreement; and (2) the Note.

D. No interest or other charges shall be assessed in connection with any of the payments enumerated in Section III. A. above.

E. Corning may, in its sole discretion, accelerate the payment of any Installment or obligation, in whole or in part, due under this Agreement calculated at a per annum discount rate of 5.5% as of the accelerated payment date. In the event of a prepayment of the sixth Installment, such prepayment shall not be reduced in accordance with Section III.A.6 (a – b) of this Agreement.

F. Within thirty (30) days prior to the six year anniversary of the Funding Effective Date, Corning shall deposit an amount equal to the lesser of the Future Direct Claim Costs or $50,000,000, in an escrow account pursuant to the terms of the Escrow Agreement, and Corning and/or the Asbestos PI Trust will be entitled to payment of the escrowed funds pursuant to the terms of the Escrow Agreement.

G. Under no circumstance shall Corning be responsible to make any contribution to the Asbestos PI Trust, other than those set forth in Section III. A. above.

H. Corning shall have no obligation to make any of the payments set forth in Section III. A. above unless:

(1) the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties, and the Corning Protected Insurers continue to receive the benefits of the Asbestos Permanent Channeling Injunction, and the releases and rights conferred upon the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties, and the Corning Protected Insurers in the Plan and the Confirmation Order;

(2) the Channeled Asbestos PI Trust Claims continue to be paid, satisfied and/or resolved by the Asbestos PI Trust, as set forth in the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, and the Asbestos PI Trust seeks and receives executed releases from any holders of Channeled Asbestos PI Trust Claims who receive payment from the Asbestos PI Trust, containing language in all material respects identical to the form of release attached as Exhibit 4 to this Agreement, and provides Corning with copies of secured releases upon request;

(3) within ten (10) days of receipt by the Asbestos PI Trust of any written inquiry by Corning, on behalf of any of the Corning Entities or Corhart Refractories Company, the Asbestos PI Trust provides Corning with written confirmation as to whether a claimant who commenced suit against any of the Corning Entities in the tort system after the Effective Date has filed a Proof of Claim against the Asbestos PI Trust;

(4) those portions of Sections 2.1(g), 5.5(a) and 6.4 (a) of the Asbestos PI Trust Agreement, attached as Exhibit A to the Plan, prohibiting the Trust Advisory Committee, the Trust Advisory Committee Professionals, the Future Claimants' Representative, and the FCR Professionals from having access to information related to the defense of asbestos personal injury claims against PPG or Corning, remain in the Asbestos PI Trust Agreement and continue to be enforced; and

(5) the Asbestos PI Trust is in material compliance with its obligations in favor of the Corning Entities, Corning Affiliates, and Corning-Affiliated Parties including, but not limited to, the Asbestos PI Trust's indemnification obligations under Section 1.4(d) of the Asbestos PI Trust Agreement, attached as Exhibit A to the Plan, and under Articles 11.7.2 and 11.8 of the Plan. Without limiting the foregoing, if the Asbestos PI Trust has not satisfied its obligation to pay indemnified defense costs or losses tendered to it by any of the Corning Entities, the Corning Affiliates, or the Corning-Affiliated Parties ("Unpaid Indemnified Costs"), Corning will have the right of set-off against its outstanding contribution to the Asbestos PI Trust in the amount of its Unpaid Indemnified Costs.

The undersigned parties agree that, if necessary, Corning may seek enforcement of the provisions of Section III (H) in the Bankruptcy Court. The Asbestos PI Trust agrees to indemnify Corning for all costs and/or legal fees the Corning Entities incur in seeking such enforcement.

IV.    Judgment Reduction / Indemnification

With respect to the operation of the judgment reduction provisions set forth in Section 11.9(b) of the Plan, the undersigned parties agree to the following:

A.    The definitions of the Corning Trust Contribution Recovery, and the Non-Protected Insurer Judgment shall have the meanings ascribed to them in Section 11.9(b) of the Plan.

B.    In consideration of Corning's agreement to the terms and conditions of Section 11.9(b) of the Plan, Corning's agreement to make the Corning Trust Contribution, and the benefits provided to Corning pursuant to the Plan, the undersigned parties agree as follows:

1.If:

a.    a Corning Non-Protected Insurer or PPG Non-Participating Insurer asserts claims for contribution, indemnity, and/or reimbursement and/or similar claims over in respect of any judgment obtained by Corning in connection with a Corning Trust Contribution Recovery Claim (said judgment hereinafter referred to as the "Corning Trust Contribution Recovery") against a PPG Participating Insurer Entity, Corning Protected Insurer, or against the Asbestos PI Trust for recovery of its allocable share of the Corning Trust Contribution Recovery and the claims and/or causes of action asserted in the action are Channeled Asbestos PI Trust Claims (said action hereinafter "the Non-Protected Insurer Action");

b.    the PPG Participating Insurer Entity or Corning Protected Insurer tenders the defense of the Non-Protected Insurer Action to the Asbestos PI Trust or the Asbestos PI Trust is sued directly in the Non-Protected Insurer Action pursuant to the provisions of the Asbestos Permanent Channeling Injunction and the Plan;

c.    the Asbestos PI Trust accepts the defense of the Non-Protected Insurer Action pursuant to the Plan; and

d.    the Corning Trust Contribution Recovery has not been reduced by such PPG Participating Insurer Entity's or such Corning Protected Insurer's allocable share of any the Non-Protected Insurer JudgmentCorning Trust Contribution Recovery and/or returned pursuant to Section 11.9(b) of the Plan;

then Corning will assume the defense of the Non-Protected Insurer Action from the Asbestos PI Trust and shall indemnify the Asbestos PI Trust for the amount of the Non-Protected Insurer Judgment that is recovered by the Corning Non-Protected Insurer or the PPG Non-Participating Insurer against the PPG Participating Insurer Entities, Corning Protected Insurers, and/or the Asbestos PI Trust so long as, in connection with the Non-Protected Insurer Action, the Asbestos PI Trust agrees to enforce any and all Plan provisions, including but not

~~limited to Section 9.1.6 of the Plan, that require the PPG Participating Insurer Entities, Corning Protected Insurers and/or the PPG Participating Insurers to assist and/or cooperate with the Asbestos PI Trust in the defense of any actions brought against the PPG Participating Insurer Entities, the Corning Protected Insurers and/or the PPG Participating Insurers for which the Asbestos PI Trust has agreed to assume the PPG Participating Insurers', the Corning Protected Insurers' and/or the PPG Participating Insurer Entities' liabilities, and the Asbestos PI Trust will assist and cooperate with Corning in the defense of the Non-Protected Insurer Action.~~; *provided, however,* ~~that in no event will Corning indemnify the Asbestos PI Trust: (1) if the Non-Protected Insurer Judgment arose from, pursuant to, or was a result of, a settlement, stipulation, and/or agreement, unless Corning, in its sole discretion, consents in writing to such settlement, stipulation and/or agreement; or (2) if the claims by the Corning Non-Protected Insurers, Corning Protected Insurers, and/or the PPG Non-Participating Insurers were not fully defended on behalf of the PPG Participating Insurers, Corning Protected Insurers and/or the Asbestos PI Trust in good faith.~~

~~.~~

## ~~V.~~IV.   Dispute Resolution

The Asbestos PI Trust and Corning ("the Parties") shall attempt to resolve any disagreement arising under this Agreement by mediation under the Commercial Mediation Rules of the American Arbitration Association ("AAA") then in effect. If the Parties cannot agree on the selection of a mediator within thirty (30) days, a mediator will be selected by the AAA. If the disagreement has not been resolved by mediation as provided above within sixty (60) days from the selection of the mediator, then the Parties shall select a panel of three arbitrators within ninety (90) days from the selection of the mediator, and the disagreement shall then be resolved by the panel of arbitrators, pursuant to the rules and regulations of the AAA. If the Parties cannot agree upon three arbitrators within one hundred twenty (120) days from the selection of the mediator, three arbitrators shall be selected as promptly as practicable by the AAA. Upon being appointed, whether by agreement of the Parties or by appointment by the AAA, the panel of three arbitrators shall render its binding decision within sixty (60) days of being appointed.

## ~~VI.~~V. Miscellaneous

A. This Agreement, and all actions taken and statements made by the Corning Entities and/or the Corning-Affiliated Parties relating to its participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedents, and shall not be taken as a standard by which other matters may be judged. Except for purposes of enforcing this Agreement, this Agreement shall not be used in any action, proceeding, or hearing to create, prove, or interpret any obligations of the Corning Entities until the Funding Effective Date. Moreover, the execution of this Agreement does not constitute a waiver of any rights any of the Corning Entities, the Corning Affiliates and/or the Corning-Affiliated Parties have under any insurance policies. Nothing in the PPG Trust Funding Agreement is or shall be binding upon the Corning Entities, Corning Affiliates and/or the Corning-Affiliated Parties.

B. This Agreement is the result of extensive negotiations among the parties. No party shall be deemed the drafter of this Agreement. Therefore, any ambiguities cannot, and should not, be construed against any party pursuant to the doctrine of "contra proferentem."

C. Failure to require performance of any aspect of this Agreement does not constitute a waiver of future performance.

D. This Agreement is an integrated agreement and contains the entire agreement among the parties regarding the matters herein. No representations, warranties, or promises have been made or relied on by any party to this Agreement other than as set forth in this Agreement. This Agreement prevails over prior communications among the parties regarding the matters herein. This Agreement may not be amended or modified except by a written instrument signed by all of the parties hereto.

E. Except as provided with respect to the Asbestos PI Trust, nothing in this Agreement shall create any third-party beneficiary rights in any Entity that is not a party to this Agreement; nor shall any Entity not a party to the Agreement derive any benefit therefrom.

F. Unless this Agreement explicitly provides to the contrary, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties hereto, solely in their capacity as such.

G. Any waivers, consents, notices, requests and demands required or permitted to be provided under the Agreement, in order to be effective, shall be in writing, and unless otherwise expressly provided herein, shall be deemed to have been duly given and made when actually delivered, or in the

case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the recipient(s) at the address(es) set forth on Schedule "F" to this Agreement.

H.    The headings used in this Agreement are inserted for convenience only and do not constitute a portion of the Agreement or in any manner affect the construction of the provisions of the Agreement.

I.    This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original and all of which when taken together shall constitute the same instrument.

J.    The parties shall agree on the terms of the press releases to be issued upon the execution of this Agreement and shall consult with each other before issuing any other press releases with respect to this Agreement and the transactions contemplated hereby, including without limitation, any termination of this Agreement for any reason.

K.    Pursuant to Sections 524(g)(2)(A), 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court, or if applicable, the District Court, shall retain and shall have exclusive jurisdiction over any matter arising in, from, or related to the Asbestos PI Trust and any action to interpret, enforce, and administer the terms of the Asbestos PI Trust Agreement, the Asbestos Permanent Channeling Injunction, and this Agreement.

L.    The Corning Entities will have no responsibility for the administrative or operational costs of the Asbestos PI Trust, nor for any payment whatsoever to the Asbestos PI Trust, other than as set forth in Section III of this Agreement.

M.    The parties to this Agreement acknowledge that they have sought the advice of their counsel prior to executing this Agreement.

N.    Any and all obligations owed by any party under this Agreement are several and not joint. Therefore, no party (or assignee) shall be responsible for another party's performance of this Agreement.

O.    Corporate transactions including without limitations mergers and acquisitions affecting Corning or any Corning Entities shall neither expand nor contract the parties' respective rights and obligations under this Agreement.

P.    Corning will provide written notice to the Asbestos PI Trust, PPG, and the PPG Participating Insurers that the conditions precedent set forth in Section II of this Agreement have been satisfied or waived in writing by Corning within two Business Days of such satisfaction or waiver in writing.

**Corning Incorporated**

By:    _____

Title:   _____

Date:   _____

**Pittsburgh Corning Corporation Asbestos Personal Injury Trust**

By:    _____

Title:   Trustee _____

Date:   _____


By:    _____

Title:   Trustee _____

Date:   _____


By:    _____

Title:   Trustee _____

Date:   _____

**On behalf of the Future Claimants' Representative**

By:    _____

Title:   _____

Date:   _____

## EXHIBIT 1
## DEFINED TERMS

**Asbestos Claims**

All Asbestos Personal Injury Claims, Indirect Asbestos Claims and PCC/PPG Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Asbestos Personal Injury Claim**

Any past, present, or future Claim, right, remedy, liability, or Demand made or brought or that could be made or brought against:

(a) the Debtor, Reorganized PCC and/or the PCC-Affiliated Parties;

(b) PCE;

(c) any PPG Entities and/or any PPG-Affiliated Parties (including any liabilities retained or assumed by the PPG Entities arising from, based upon, or attributable to Asbestos Personal Injury Claims);

(d) any PPG Participating Insurer Entities in their capacity as such, and/or as issuers of the PPG Participating Insurance Policies and policies issued to or covering the Debtor (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

(e) any Corning Entities and/or any Corning-Affiliated Parties (including any liabilities retained or assumed by the Corning Entities arising from, based upon, or attributable to Asbestos Personal Injury Claims);

(f) any Corning Protected Insurers, in their capacity as such, and/or as issuers of the Corning Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law); or

(g) any PCC Settled Insurers, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

under any statute or theory of law, equity, admiralty or otherwise, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship, arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos containing products or materials (including without limitation (i) such Claims or Demands arising in whole or in part out of any actual or alleged relationship on the part of either the PPG Entities or the Corning Entities with the Debtor or (ii) such Claims or Demands that are allegedly covered by (a) shared insurance policies covering both the PPG Policyholder Companies and the Debtor or policies covering either of them, or (b) shared insurance policies covering both the Corning Policyholder Companies and the Debtor

or policies covering either of them), which seek damages of any kind (including but not limited to punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable or mandatory relief, under any statute or theory of law, equity, admiralty or otherwise; provided, however, that this definition shall not include (i) any PPG Asbestos Premises Claims as to the PPG Entities; (ii) any Corning Asbestos Premises Claims as to the Corning Entities; or (iii) any Workers' Compensation Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

**Asbestos Protected Party**

Any of the following Entities:

(a) the Debtor, Reorganized PCC and/or the PCC-Affiliated Parties;

(b) the PPG Entities, the PPG Affiliates and the PPG-Affiliated Parties, with respect to Asbestos PI Trust Claims that arise, in whole or in part, out of exposure to:

(1) Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises; or

(2) any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on the Debtor by reason of any of the PPG Entities', the PPG Affiliates', the PPG-Affiliated Parties' or the PPG Participating Insurer Entities': (i) ownership of a financial interest in the Debtor; (ii) involvement in the management of the Debtor, or service as an officer, director or employee of the Debtor or a related party; (iii) provision of insurance to the Debtor or a related party; or (iv) involvement in a financial transaction affecting the financial condition of the Debtor or a related party;

(c) the PPG Participating Insurer Entities, in their capacity as such and/or as issuers of PPG Participating Insurance Policies and policies issued to or covering the Debtor;

(d) the Corning Entities, the Corning Affiliates, the Corning-Affiliated Parties and the Corning Protected Insurers, in their capacity as such and/or as issuers of the Corning Insurance Policies, with respect to Asbestos PI Trust Claims that arise, in whole or in part, out of exposure to:

(1) Unibestos, or any other asbestos or asbestos-containing products manufactured, sold and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises; or

(2) any other alleged asbestos or asbestos-containing product to the extent that a claimant is alleging or seeking to impose liability, directly or indirectly, for the conduct of, claims against or demands on the Debtor by reason of any of the Corning Entities', the Corning Affiliates', the Corning-Affiliated Parties' or the Corning Insurers': (i) ownership of a financial interest in the Debtor; (ii) involvement in the management of the Debtor, or service as an officer, director or employee of the Debtor or a related party; (iii) provision of insurance to the Debtor or a related party; or (iv) involvement in a financial transaction affecting the financial condition of the Debtor or a related party;

(e) without limiting any protection afforded by subsection (c) above, and for the avoidance of doubt, the PCC Settled Insurer Entities, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies;

(f) any Entity (and any past, present, or future corporate parent, subsidiary, predecessor, Affiliate, officer, director, employee, consultant, attorney, accountant, advisor, administrator, representative or agent of any such Entity, in his, her or its capacity as such) that, pursuant to the Plan or after the Effective Date, becomes a direct or an indirect transferee of, or successor to, (i) any of the Entities identified in subparagraphs (a) – (e) above, (ii) the Asbestos PI Trust or (iii) the assets or stock of any of the parties referenced in clauses (i) or (ii) hereof (but only to the extent that liability is asserted to exist by reason of its becoming such transferee or successor);

(g) any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to any of the Entities identified in subparagraphs (a) – (e) above (but only to the extent that liability is asserted to exist by reason of such Entity's becoming such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired);

(h) any Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtor, Reorganized PCC, or the Asbestos PI Trust on account of Asbestos PI Trust Claims by reason of one or more of the following:

    (1) such Entity's involvement in the management of the Debtor, Reorganized PCC or an Affiliate of the Debtor or any predecessor in interest of the Debtor, Reorganized PCC, or an Affiliate of the Debtor, including PPG and Corning;

    (2) such Entity's ownership of a financial interest in the Debtor, Reorganized PCC, or a past or present Affiliate of the Debtor, or any predecessor in interest of the Debtor, Reorganized PCC, or an Affiliate of the Debtor, including PPG and Corning;

    (3) such Entity's service as an officer, director, or employee of the Debtor, Reorganized PCC, or predecessor in interest and/or Affiliate of the Debtor, including PPG and Corning;

    (4) such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition of the Debtor, Reorganized PCC, or a predecessor in interest and/or Affiliate of the Debtor, including PPG and Corning.

<ins>The Corning Parties and the Corning Insurers are not Asbestos Protected Parties among themselves with respect to Reserved Claims.</ins>

## Channeled Asbestos PI Trust Claim

Any Asbestos PI Trust Claim against an Asbestos Protected Party. ~~For the avoidance of doubt,~~ Channeled Asbestos PI Trust Claims do not include ~~Reserved Claims~~<ins>any Reserved Claims nor Non-Derivative PPG/Corning Claims. The fact that a person has asserted, or in the future asserts against the Asbestos PI Trust, a Channeled Asbestos PI Trust Claim will not by itself cause any other claim held by that person to become channeled if the other claim does not otherwise fall within the definition of Channeled Asbestos PI Trust Claim.</ins>

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

## Corning Parties

Any of the Corning Entities, Corning Affiliates and/or Corning-Affiliated Parties. The definition of "Corning Parties" does not include PCE.

## Indirect Asbestos Claim

Any past, present or future Claim, right, remedy, liability or Demand made or brought or that could be made or brought against:

(a) the Debtor, Reorganized PCC or the PCC-Affiliated Parties;

(b) PCE;

(c) any PPG Entities and/or any PPG-Affiliated Party (including any claims or demands arising from liabilities retained or assumed by the PPG Entities arising from, based upon or attributable to Indirect Asbestos Claims);

(d) any PPG Participating Insurer Entities in their capacity as such, and/or as issuers of the PPG Participating Insurance Policies and policies issued to or covering the Debtor (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

(e) any Corning Entities and/or any Corning-Affiliated Parties (including any claims or demands arising from liabilities retained or assumed by the Corning Entities arising from, based upon or attributable to Indirect Asbestos Claims);

(f) any Corning Protected Insurers, in their capacity as such and/or as issuers of the Corning Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law); or

(g) any PCC Settled Insurer Entities, in their capacity as such and/or as issuers of the PCC Settled Insurance Policies (including without limitation Claims or Demands brought pursuant to a direct action statute or similar theory of law);

under any statute or theory of law, equity, admiralty, or otherwise, for contribution, reimbursement, subrogation, guaranty, payment or indemnity, or insurance coverage on account of liability incurred in an action in which the claimant has been or is a defendant in such action containing a Claim or Demand for damages of any kind (including, but not limited to, punitive or exemplary damages), costs, expenses, or other remedies, including legal, equitable, statutory or mandatory relief, for, arising out of, resulting from, or attributable to, directly or indirectly, bodily injury, sickness, disease, illness, ailment, death, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, or survivorship arising out of or based on or attributable to, in whole or in part, exposure to asbestos or asbestos containing products or materials, except for: (i) any liability based on PPG Asbestos Premises Claims as to the PPG Entities; or (ii) any liability based on Corning Asbestos Premises Claims as to the Corning Entities.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

## Non-Derivative PPG/Corning Claim

A non-derivative, independent Claim against a PPG Entity, PPG Affiliate, PPG-Affiliated Party, Corning Entity, Corning Affiliate, or Corning-Affiliated Party or Corning Protected Insurer alleging exposure to Pyrocal (or any other PPG product) or to Corhart spacers (or any Corning product) that is wholly unrelated to the Debtor. For the avoidance of doubt, a Non-Derivative PPG/Corning Claim is any Claim against the foregoing Entities that does not involve Unibestos or other asbestos or asbestos-containing product manufactured, sold, and/or distributed by the Debtor, or asbestos on or emanating from any PCC premises, unless such Claim is a PCC Conspiracy Theory Claim or by pleading, evidence, proof, allegation, proffer of evidence or otherwise involves PCC or its conduct as the basis for liability of one of the foregoing Entities.

## PCC Conspiracy Theory Claim

A Claim in which PPG or Corning is alleged to be liable with PCC based on allegations of conspiracy, alter ego, piercing the corporate veil, domination and control, concert of action, common enterprise, aiding and abetting, respondeat superior, negligent provision of services, principal and agent, successor in interest, and other joint and/or several liability theories.

### PCC/PPG Insurance Practices Claims

All past, present or future Claims or dDemands that (i) allege unfair competition, unfair or deceptive claims handling or trade practices, insurer bad faith, conspiracy, failure to disclose information, or any similar theory of law, arising out of or based on or attributable to the handling of any asbestos-related claim against the PPG Entities or the Debtor or (ii) seek recovery or relief from any of the PCC Settled Insurers or PPG Participating Insurers (or any past or present corporate parent, subsidiary, predecessor or Affiliate of any PCC Settled Insurer or PPG Participating Insurer), in its capacity as an insurer of the PPG Entities or the Debtor, or any of their respective past or present officers, directors, employees, agents, representatives and attorneys, or the successors of any of them, in their capacity as such, arising out of or based on or attributable to, in whole or in part, asbestos or asbestos-related claims. Notwithstanding the foregoing, any claim that meets the definition of Asbestos Personal Injury Claims, Indirect Asbestos Claims, PPG Asbestos Premises Claims, Corning Asbestos Premises Claims, or Asbestos Property Damage Claims is excluded from this definition of PCC/PPG Insurance Practices Claims.

Nothing in this definition shall limit the last paragraph of the definition of "Asbestos Permanent Channeling Injunction."

### Reserved Claims

Reserved Claims shall have the meaning ascribed to it in Section 11.13.1 of this Plan.

Any past, present or future claims, rights, remedies, liabilities, demands, defenses and/or causes of action by any of the Corning Parties, and/or their insurers (in their capacity as insurers of the Corning Parties) in connection with the Corning Insurance Policies and/or the Other Corning Policies including, but not limited to, any claims or demands for defense, indemnity, contribution, bad-faith, breach of contract, reimbursement, Corning Trust Contribution Recovery Claims and/or extra-contractual remedies. Reserved Claims shall not include any claims for contribution, indemnity, reimbursement, equitable subrogation, or

similar claims-over by a Corning Non-Protected Insurer against a Corning Protected Insurer in connection with Corning Trust Contribution Recovery Claims.