FILED
2013 NOV 12 A 11:16
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| PITTSBURGH CORNING CORPORATION, | : | Case No. 00-22876-TPA |
| *Debtor* | : | Chapter 11 |
| | | |
| MT. MCKINLEY INSURANCE | : | |
| COMPANY and EVEREST | : | Related to Doc. Nos. 9443, 9444, 9445, |
| REINSURANCE COMPANY, | : | 9446, 9447, and 9471 |
| *Movants* | : | |
| | : | |
| v. | : | |
| | : | |
| PITTSBURGH CORNING | : | |
| CORPORATION, | : | |
| *Respondent*. | : | |

*Appearances:* James Restivo, Esq., for the Debtor/Respondent
Tony Draper, Esq., for Mt. McKinley Insurance Company and
Everest Reinsurance Company
Peter Lockwood, Esq., for Asbestos Claimants' Committee
Justin T. Romano, Esq., for Garlock Sealing Technologies, LLC
Ed Harren, Esq., Representative of Future Claimants
David Lampl, Esq., for the Committee of Unsecured Trade Creditors
David McConigle, Esq., for PPG Industries, Inc.

# MEMORANDUM OPINION

Mount McKinley Insurance Company and Everest Reinsurance Company (hereinafter

referred to collectively as "Mt. McKinley") have filed a ***Motion to Reconsider*** ("Motion") at Doc.

No. 9471 related principally to the *Revised Memorandum Opinion Setting Forth Findings of Fact

and Conclusions of Law Regarding Confirmation of the Modified Third Amended Plan of

Reorganization as Modified Through May 15, 2013, and the Asbestos Permanent Channeling*

1

*Injunction* ("RMO") filed on May 24, 2013, at Doc. No. 9443, and the *Final Order Confirming Modified Third Amended Plan of Reorganization as Modified Through May 15, 2013, and, Pursuant to 11 U.S.C. §524(g), Issuing Asbestos Permanent Channeling Injunction* ( "Confirmation Order")*,* Doc. No.9444.[1]    A joint *Response* to the *Motion* was filed at Doc. No. 9526 by the Debtor, the Official Committee of Asbestos Creditors, the Future Claimants' Representative, PPG Industries, Inc. and Corning Incorporated (for the sake of convenience, this group of entities will be collectively referred to as the "Plan Advocates" for purposes of this Opinion).  The *Motion* has been briefed and extensive oral argument was heard on September 9, 2013.  For the reasons that follow, the *Motion* will be granted in part and denied in part.

## *RELEVANT FACTS AND PROCEDURE*

This case was filed on April 16, 2000, and obviously has had a lengthy and complex procedural history.  The pertinent aspects of that history are set forth in some detail in the *RMO* and need not be recounted again here at that level.  Only the most basic facts germane to the *Motion* are set forth immediately below, with any further details noted later in the *Opinion* as necessary.  It should also be kept in mind that from the inception of the case all the way through the issuance of the *RMO* and the  *Confirmation Order* it was assigned to the Hon. Judith K. Fitzgerald.  Judge

---

[1]    In addition to the *RMO* and the *Confirmation Order*, the *Motion* also relates to several other accompanying implementing *Orders* that were issued the same date. *See Order Granting in Part and Denying in Part Motions For Reconsideration of Memorandum Opinion and Interim Order filed at Doc. Nos. 9409, 9410* ("Order on Interim Motion"), Doc. No. 9445; *Order Denying Motion for Reconsideration of 2011 Memorandum Opinion and Order* ("Order on 2011 Motion for Reconsideration"), Doc. No. 9446; and *Order Denying Motion for Entry of Case Management Order* ("CMO Order"), Doc. No. 9447.

Fitzgerald retired effective the end of May 2013, and the case was reassigned to the Undersigned at that time, so consequently the Court is being asked to reconsider the decision of another judge.[2]

The *Motion* concerns the confirmation of the Modified Third Amended Plan of Reorganization ("Plan"), which was originally filed on August 17, 2012 at Doc. No. 8928, and amended on May 15, 2013, Doc. No. 9402.  Under the Plan, an Asbestos Personal Injury Settlement Trust ("Trust") is to be created and funded for the purpose of paying certain asbestos-related claims. Another key feature of the Plan is the issuance of an Asbestos Permanent Channeling Injunction ("Injunction") pursuant to *11 U.S.C. §524(g)*.  The Injunction would protect "Asbestos Protected Parties," including the Debtor and certain other entities,  from being sued over the covered claims, instead channeling those claims to the Trust for resolution.

On May 16, 2013, following hearings held on May 13th and 15th,  Judge Fitzgerald issued a Memorandum Opinion ("Interim Opinion") at Doc. No. 9409,  and an Interim Order confirming the Plan ("Interim Order") at Doc. No. 9410.[3]  These filings were "interim," because she provided the parties an opportunity to file motions for reconsideration "so that this court could

---

[2]        The Court has previously addressed the issue of one judge being asked to reconsider a decision by another judge of the same court who has since retired.  The Court concluded that such reconsideration can be done, but that care must be taken to ensure that the proper standard of reconsideration is followed rather than inadvertently falling into a *de novo* or appellate review standard.  *See In re Titus*, Adv. No. 10-2338, Order of May 14, 2012, Doc. No. 76.  In a subsequent opinion in that same case, the Court also pointed out that this circumstance "warrant[s] a circumspect approach rather than an expansive one." *See In re Titus*, 479 B.R. 362, 369 (Bankr. W.D. Pa. 2012), affirmed in part, vacated in part, remanded by 2013 WL 5466805 (W.D. Pa. September 30, 2013).

[3]        Judge Fitzgerald indicated in the *RMO* that her decision was based not only on the most recent hearings held on the Plan during May 2013, but on the entire record of the case, including extensive confirmation hearings that were held on May 3-6, 2004, and June 3, 4, 9, and 10, 2010, which involved prior plan iterations.

correct any typographical or scrivener's errors or any omissions or inaccuracies." *RMO* at 3. Three motions for reconsideration were filed in response, including one by Mt. McKinley. *See* Doc. No. 9420 ("the first Mt. McKinley motion for reconsideration").

On May 23, 2013, a hearing was held to consider the various motions for reconsideration. Based on that hearing and the motions for reconsideration, Judge Fitzgerald then issued the *RMO* and the *Confirmation Order* on May 24, 2013, as well as the other "implementing Orders" identified in footnote 1, above. These were revised versions of the *Interim Opinion* and *Interim Order*, and in filing them Judge Fitzgerald made clear that she was granting the motions for reconsideration in part, and denying them in part. *See* Doc. No. 9445. In other words, she granted relief and made changes to the *Interim Opinion* and the *Interim Order* as to some, but not all, of the matters raised in the three motions for reconsideration. Mt. McKinley then filed the *Motion* on June 6, 2013.

### *LEGAL STANDARD*

Before discussing the specific issues raised by Mt. McKinley in the *Motion*, it will be helpful first to review the general principles to be applied when deciding a motion under *Fed.R.Bankr.P. 9023*, incorporating *Fed.R.Civ.P. 59(e)*. In language equally applicable to a case in the Bankruptcy Court, the District Court recently articulated the general approach to be followed in deciding such motions:

> A motion for reconsideration is not properly grounded in a request for a
> district court to rethink a decision it has already rightly or wrongly made ...
> Litigants are cautioned to "evaluate whether what may seem to be a clear

4

> error of law is in fact simply a point of disagreement between the Court and
> the litigant." ... Motions for reconsideration should not relitigate issues
> already resolved by the court and should not be used to advance additional
> arguments which could have been made by the movant before judgment.

*Solis v. Makozy*, 2012 WL 1458232, at *1 (W.D. Pa. Apr. 27, 2012) (citations omitted).  Mere

disagreement with a decision does not justify reconsideration.  *Wilkerson v. Samuels*, 2012 WL

7145714, at *2 (M.D. Pa. Dec. 13, 2012).  In keeping with the above, motions for reconsideration

are typically only granted "sparingly," in "extraordinary circumstances." *Foster v. Westchester Fire*

*Ins. Co.* 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012).  Additionally, as noted previously,

*see* n. 2, *supra*, the circumstances in the present case involving successive judges requires even more

caution than would normally be required on this type of motion.

Motions for reconsideration under *Rule 59(e)* must rely on one of three grounds: (1)

an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to

correct a clear error of law or fact or to prevent manifest injustice.  *See North River Ins. Co. v.*

*CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  In the present case, the Parties appear

to agree that the *Motion* does not allege any change of law or newly-discovered evidence as a ground

for relief, so  the sole argument is over whether there is a need under the third prong to correct a

clear error of law or fact or to prevent a manifest injustice.

The exact contours  of the "clear error" and "manifest injustice" terms in this third

prong under *Rule 59(e)* are not entirely settled in the Third Circuit, but clearly a moving party has

a very high hurdle to leap over before it can meet the required standard to cause a judgment to be

altered or amended on either of those bases.  *In re Titus*, 479 B.R. 362 at 367.

5

Clear error has been described as a "very exacting standard." *Bancroft Life & Cas. v. Lo,* 2013 WL 1063864 *2 (W.D. Pa. March 14, 2013) (quoting *Hopwood v. Texas,* 236 F.3d 256, 272 (5th Cir. 2000)). A final judgment must not be just possibly wrong, or even probably wrong, it must be "dead wrong" to constitute clear error. *Lardner v. F.B.I.,* 875 F. Supp. 2d 49, 53 (D.D.C. 2012), *Campion v. Old Republic Home Prot. Co., Inc.,* 2011 WL 1935967 (S.D. Cal. 2011). In even more colorful language, one court described the level of "wrongness" necessary to make a decision clearly erroneous as being such as to "strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir. 1988). Put another way, there is no clear error where the issue is a "debatable one." *McDowell v. Calderon,* 197 F.3d 1253, 1256 (9th Cir. 1999).

Proof of "manifest injustice" is similarly challenging for Mt. McKinley here. As one court recently stated with respect to what "manifest injustice" entails for purposes of *Rule 59(e)*:

> There is no judicial consensus ... but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds. A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to "manifest injustice," the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.

*In re Green Goblin, Inc.,* 2012 WL 1971143, at *1 (Bankr. E.D. Pa. May 31, 2012) (quoting *In re Roemmele,* 466 B.R. 706 (Bankr. E.D. Pa. 2012)). Another court, after reviewing relevant precedent, concluded that manifest injustice "must entail at least (1) a clear and certain prejudice

6

to the moving party that (2) is fundamentally unfair in light of governing law." *Mohammadi v. Islamic Republic of Iran*, __ F. Supp. 2d. __, 2013 WL 2370594, at *20 (D.D.C. May 31, 2013). *See also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601 (7th Cir. 2000), rehearing denied, cert. denied as *Beverly v. Oto*, 531 U.S. 1152 (2001) (manifest error is not demonstrated by disappointment of the losing party, rather it is the wholesale disregard, misapplication, or failure to recognize controlling precedent).

  The Court may now turn to an examination of the grounds for reconsideration raised in the *Motion*, being mindful that Mt. McKinley, as the moving party, bears the burden of proof with respect to the demanding standard described above. *Titus, supra*.

## DISCUSSION

  Mt. McKinley has raised five discrete issues in its *Motion*, which the Court will address seriatim.

### (A) *Admission of Affidavits Regarding Status of Entities*

  The first issue raised by Mt. McKinley concerns the opening up of the evidentiary record on May 24, 2013, shortly before the Plan was confirmed, to allow the admission of two affidavits that were intended to demonstrate that none of the entities that would be receiving the protection of the Injunction pursuant to *11 U.S.C. §524(g)* were limited partnerships.  The two affidavits in question were the Gordon Affidavit,  Doc. No. 9441, and the Jolly Affidavit, Doc. No.

7

9442,  respectively made by corporate officers of PPG Industries, Inc. and Corning Incorporated.[4]

Both of these affidavits state that none of the entities in question is a limited partnership.  Some

background information is necessary in order to fully understand this issue.

As indicated previously, a key feature of the Plan is the Injunction, which is intended

to provide protection to the Debtor and certain non-debtor parties pursuant to *11 U.S.C. §524(g)* by

enjoining any court suits against them for asbestos claims and instead requiring claimants to pursue

their claims against the Trust that is to be established by the Plan.  The parties to be provided such

protection under the Injunction, the Asbestos Protected Parties,  are listed in Plan Exhibits K and

L.

Mt. McKinley has long objected to the part of the Plan related to the Injunction on

various grounds.  *See*, for example, Mt. McKinley's Objections to Plan filed on November 18, 2009,

at Doc. No. 7132, pp. 26, *et. seq*. (Injunction exceeds scope of *Section 524(g)* by channeling non-

derivative liabilities of non-debtors based claims that have no connection to the Debtor, citing

*Section 524(g)(4)(A)(ii)*);  Mt. McKinley's Post-Trial Brief in Opposition to Confirmation filed on

August 19, 2010, at Doc. No. 7901, pp. 8-9 (same);  Mt. McKinley Objections to Plan filed on

September 19, 2012, at Doc. No. 8984, pp. 56-57 (the scope of the Injunction is too broad because

it includes non-debtor entities that will not provide sufficient benefits to the Trust to merit

protection, and entities that have not been alleged to have derivative liability for the covered

asbestos claims*, citing Sections 524(g)(4)(A)(ii)* and *(B)(ii)*).

---

[4]      The Gordon Affidavit was made by Greg E. Gordon, who is employed as a senior counsel
by PPG Industries, Inc., and is an Assistant Secretary of the corporation.  The Jolly Affidavit was filed by
Linda E. Jolly who is an employee of Corning Incorporated and the Secretary of the corporation.

However, until quite recently, Mt. McKinley had never specifically objected to the Plan on the grounds that some of the proposed Asbestos Protected Parties may be of a type of legal entity (*i.e.*, limited partnership) that is not even authorized to be protected by an injunction issued under *Section 524(g)*. The first such reference to that issue that the Court has found, or been directed to, is in Supplemental Objections that Mt. McKinley filed on May 13, 2013, at Doc. No. 9386, arguing that the Injunction would extend protection to entities that are partnerships or others that do not appear to be corporations within the meaning of the Bankruptcy Code. These Supplemental Objections further complained that there was no evidence by which the Court could determine which entities proposed to be protected by the Injunction were corporations. Then, in the first motion for reconsideration filed by Mt. McKinley at Doc. No. 9420 on May 21, 2013, it complained that modifications which had been made to the Plan did not clarify which entities were entitled to the Injunction protection, noting that three entities that were previously identified as partnerships remained on the list of protected entities, and concluding that this circumstance "raises questions concerning whether the remaining entities qualify as 'affiliates' under the Code's definition." *Id.* at 5. Finally, of course, in the *Motion*, Mt. McKinley continued this theme by objecting to the admission of the Jolly and Gordon Affidavits, which were obviously directed toward the limited partnership issue.

Were the Undersigned viewing the record of the case up to the Supplemental Objections by Mt. McKinley in a vacuum, it would thus appear that the limited partnership issue had somehow suddenly sprung up "out of the blue" very late in the process, with no obvious explanation why. The initial filings by the Plan Advocates in response to the *Motion* suggested that

9

it was actually Judge Fitzgerald who first raised this issue sometime during one of the Plan hearings in the first part of May 2013, and that Mt. McKinley then "opportunistically" seized upon her comments to raise a new last-minute objection to the Plan.  During oral argument on the *Motion*, Counsel for Mt. McKinley acknowledged that Judge Fitzgerald had first brought up the limited partnership issue, although he stated that she had done so in connection with Mt. McKinley's objection that there was insufficient evidence of record to demonstrate that all of the proposed Asbestos Protected Parties qualify for protection under *Section 524(g)*. The Court thought the matter was of potentially sufficient importance to require the Parties to either point out where in the record Judge Fitzgerald's remarks could be found, or in the alternative submit a stipulation as to her remarks, or failing those, to each submit their version of events.  *See* Order of September 25, 2013, Doc. No. 9639.

As it turns out, the remarks in question were made "off the record" during   in-chambers conferences held on May 9 and 10, 2013.  The Parties were not able to agree on a stipulated version of events and so each submitted a separate version.  See Doc. Nos. 9661, 9662. While each side has put its own "spin" on what occurred, they do seem to agree on the basic fact that during these conferences Judge Fitzgerald *sua sponte* raised the issue of whether Exhibits K and L included among the Asbestos Protected Parties limited partnerships that would not qualify for protection under *Section 524(g)* because such are excluded from the  term "corporation" as defined in *11 U.S.C. §101(9),* and thus  would not be included in the definition of an "affiliate" under *11 U.S.C. §101(2)(B)*.  *See* Doc. No. 9661 at ¶¶3,5; Doc. No.  9662 at ¶4.

Significantly for present purposes, Mt. McKinley also states the following with respect to this event:

> 5.    Following the in-chambers discussions on May 9, Judge Fitzgerald ordered that the Plan Proponents and Plan Supporters meet with Mt. McKinley's counsel to work on these remaining objections/problems with the structure of the Plan and to meet and confer with each other during the afternoon and evening to attempt to reach a consensual resolution of these issues. She stated that if the parties were unable to fix these select problems with the Plan such *that it could be confirmed, she would dismiss the bankruptcy case*. She ordered the parties to report back to her on their progress by the end of the day and ordered the parties to return on May 10 for additional in-chambers discussions.

Doc. No. 9662 at 2 (emphasis added).  Mt. McKinley goes on to argue that if Judge Fitzgerald had not believed the limited partnership issue to be within the scope of its prior objections she would not have required the Parties to engage in these discussions.  *Id.*

The Court cannot agree with that premise.  A bankruptcy court has an independent duty to satisfy itself that the requirements for plan confirmation have been met, regardless whether objections have been filed.  *In re Stigliano*, 483 B.R. 303, 305 (Bankr. W.D. Pa. 2012).  Based on the context in which the limited partnership issue came up, the Court finds that more likely than not Judge Fitzgerald was raising the matter pursuant to this independent duty rather than because she somehow thought it fell within the scope of the objections that Mt. McKinley had theretofore made. The Court thus views the limited partnership issue as an "objection" to the Plan raised by Judge Fitzgerald, and only subsequently latched on to by Mt. McKinley.  Put another way, the Court finds that had Judge Fitzgerald never raised the issue, it likely would never have become a part of the case.

Since it was Judge Fitzgerald's objection, the Court must give considerable weight to whether she was satisfied with the manner in which it was resolved.  Given that she confirmed

11

the Plan after informing the Parties that the case would be dismissed if the matter was not "fixed,"

Judge Fitzgerald obviously concluded that the limited partnership issue was adequately addressed

by the Gordon and Jolly affidavits.  Considering the circumstances that were presented, the Court

cannot say with the required level of certainty that she was "wrong" in that conclusion to justify

granting the *Motion*.

The case had been dragging on for 13 years, and just when it appeared to be nearing

a conclusion, a last-minute issue that was frankly something of a technicality threatened to derail

it.  The Jolly and Gordon Affidavits, which were filed as directed by Judge Fitzgerald at the May

23, 2013 hearing  in direct response to concerns about updated Exhibits K and L expressed by Mt.

McKinley, while less than ideal, were probably the best that could be done  in the available time

frame[5] to provide sufficient evidence that non-eligible entities will not receive protection under the

Injunction.   The record appears to support the view that  Mt. McKinley, while perhaps not

specifically endorsing Judge Fitzgerald's direction for the submission of affidavits as a means to fix

any evidentiary shortcoming on the limited partnership issue,  did not express any opposition or

objection to it either. *See* 5/23/2013 Tr. at 36- 39.

Furthermore, the Affidavits were from an Assistant Secretary and legal counsel of

PPG, and the Secretary of Corning, just the individuals whom the Court would expect to have

---

[5]      The Court notes that Judge Fitzgerald was making every effort to rule on the Plan
confirmation prior to her retirement.  It was, of course, theoretically possible that confirmation could have
been delayed beyond that date and assigned to a new judge.  However, as a practical matter it would have
been extremely difficult to do so and unfair to all concerned because a newly-assigned judge would have been
faced with the monumental task of assimilating the huge and complex record with which Judge Fitzgerald
was already familiar.

personal knowledge of the corporate status of various entities affiliated with their respective companies.  It has now been five months since the Affidavits were filed, plenty of time for Mt. McKinley to have done an investigation[6] and reported to the Court that one or more of the Asbestos Protected Parties is actually a limited partnership, thereby showing the Affidavits to be false.  If Mt. McKinley had done so, that might be the type of "new evidence" that could warrant reconsideration under one of the other *Rule 59(e)* prongs.  The fact that Mt. McKinley has not done this indicates that either they have investigated and not found any such discrepancy, or they have not investigated, which itself demonstrates a lack of real concern about the issue.

One final point is worth noting.  The Confirmation Order includes a provision stating that, notwithstanding anything to the contrary in that order or the Plan,  the Injunction shall not apply to "non-debtor entities that are not described in *§524(g)(4)(A)(ii)* or *(iii)*.  Doc. No. 9444 at 7.  Thus, if it ever becomes known that any of the Asbestos Protected Parties as shown in revised Exhibits K and L is actually a limited partnership that should not be entitled to the protection of the Injunction, Mt. McKinley or any other interested party would have the ability to raise that issue.  For all of these reasons, the Court finds that  Mt. McKinley has failed to meet its burden of showing a clear error of law or manifest injustice with respect to this part of the *Motion*.

### (B)    Scope of the Injunction

The second argument raised in the *Motion* is that the scope of the Injunction is

---

[6]    The Court assumes that the corporate/limited partnership status of the Asbestos Protected Parties could be determined with little difficulty through on-line public sources or private databases such as LEXIS or Westlaw.

13

unclear as a result of the amendment to Exhibit L that was done to address the limited partnership issue that arose late in the process. The original version of Exhibit L included a Table 1 listing "PPG Entities" and a Table 2 listing "PPG Affiliates" for all purposes under the Plan. The amended version of Exhibit L, which was submitted on May 15, 2013, Doc. No. 9402, added two additional tables to Exhibit L, Tables 3 and 4, corresponding to Tables 1 and 2 respectively, but striking out certain of the entities/affiliates in the lists to "show the PPG Entities and PPG Affiliates that will be Asbestos Protected Parties." Doc. No. 9402 at 28, *et. seq*. In other words, out of the entire "set" of PPG Entities and PPG Affiliates as established in Tables 1 and 2, Tables 3 and 4 were intended to respond to concerns expressed by Judge Fitzgerald and designate a subset showing only those Entities/Affiliates that would be protected by the Injunction.[7]

That such was the intent is fairly clear to the Court. Mt. McKinley, however, argues that the execution of that intent was faulty, resulting in uncertainty as to which of the Entities/Affiliates will actually be extended protection under the Injunction. It says that the "fix" of adding the two new tables now means that Tables 3 and 4 must be consulted when construing subpart (b) of the definition of "Asbestos Protected party" under the Plan, while Tables 1 and 2 appear to need to be consulted for other purposes. Mt. McKinley points specifically to footnote 14 of the *RMO*, which was added by Judge Fitzgerald as a result of the first motion for reconsideration filed by Mt. McKinley, and which states:

---

[7]    Tables 1 and 2 were retained in revised Exhibit L by PPG to remain untouched for other purposes, such as defining releases granted to PPG participating insurers, and the previously agreed upon meaning of the terms "PPG Affiliates" and "PPG Entities." *See Response* to *Motion*, Doc. No. 9526 at ¶36.

14.   References throughout this Memorandum Opinion to PPG Entities, PPG Affiliates, Corning Entities and Corning Affiliates shall be construed to refer only to revised Exhibits K and L as reflected in Doc. Nos. 9402 and 9405.

Doc. No. 9443 at 56.  Mt. McKinley further points to Paragraphs 176, 177, 367 and 368 of the *RMO* as introducing confusion into the scope of the Injunction.  The Plan Advocates respond by denying that there is any confusion, and argue that even if there is somehow, there is no need to change the findings in the *RMO* because the *Confirmation Order* makes the scope of the Injunction clear.

In deciding this part of the *Motion* the Court believes it must keep its eye on the big picture rather than get lost in the details.  Perhaps there is some level of "confusion" in the *RMO* as argued by Mt. McKinley, which would hardly be surprising given the length and complexity of that document, the length and complexity of the Plan it is confirming, and the relatively "last minute" nature of the "fix" implemented to remove any PPG Entities or Affiliates that are limited partnerships from the scope of the Injunction.  It is difficult to be too critical of a final product that had  a lot of moving parts to contend with and limited time within which to deal with those "moving parts."

The key fact for the Court at this juncture is that all Parties agree that Tables 3 and 4 of Exhibit L were added, with the agreement of Judge Fitzgerald, for the sole purpose of defining the PPG Entities and Affiliates that would fall within the scope of the Injunction.  In these circumstances, rather than engage in a parsing of the *RMO* in an effort to locate and correct any possible confusion on that undisputed point, it makes more sense to simply presume the present possibility of confusion and make a clarifying statement on the scope of the Injunction that will

15

remove any doubt on that score.  *See, e.g., Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25

F.Supp. 2d 372 (S.D.N.Y. 1998) (court may issue an order clarifying the scope of an injunction in

order to facilitate compliance with the order).  Thus, to that limited extent the *Motion* will be

granted.


### (C)    Exclusion of "Garlock Exhibits" from Evidentiary Record


The third issue raised in the *Motion* relates to the so-called "Garlock Exhibits."

Those are 11 discovery responses to requests for admission that were served on a company called

Garlock Sealing Technologies ("Garlock") by individual plaintiffs in outside asbestos-related tort

litigation cases in which Garlock was a defendant.[8]   As explained by Garlock at the June 9, 2010

confirmation hearing, it served requests for admission in those outside cases asking plaintiffs to

admit if they had been exposed to asbestos containing materials or products from Pittsburgh

Corning.  The Garlock Exhibits were responses in which the plaintiffs stated that they could neither

admit nor deny exposure to Pittsburgh Corning products because investigation was ongoing.

Garlock asserted at the confirmation hearing that those responses were inconsistent with the Plan

ballots filed by or on behalf of those same individuals in the  present case,  wherein  voters were

required to certify under penalty of perjury that they did have a claim against Pittsburgh Corning

related to asbestos exposure.


The Garlock Exhibits themselves, together with some other items of evidence not

---

[8]       The items in question were identified as Garlock Exhibits 121, 132, 147, 165, 167, 174, 178, 203, 245, 327, and 356.

presently at issue, were the subject of extensive and aggressive argument at the June 9, 2010 hearing.

Judge Fitzgerald initially seemed to rule that they were inadmissible hearsay. See 6/9/10 Tr. at

74:22-75:7 (Doc. No. 7830). However, after further argument and testimony occurred, she

subsequently allowed into evidence any of the responses to requests for admission that were dated

after the Plan ballots, that resulting group being the Garlock Exhibits. In the *RMO*, Judge Fitzgerald

revisited that issue and concluded that the Garlock Exhibits would not be admitted into the record.

*RMO* at ¶¶225-226. Mt. McKinley, which interestingly enough was a silent bystander at the

confirmation hearing when the fate of the Garlock Exhibits was being argued, now contends that it

was clear error for them to be excluded.

      The Court has reviewed the transcript from the June 9, 2010 hearing, with specific

reference to the argument concerning the Garlock Exhibits. Such review indicates that their

admissibility into evidence was always somewhat tentative. As indicated above, Judge Fitzgerald

initially indicated they would not be admissible on hearsay grounds. Even after she moved from that

firm view to allow admission, her comments made clear that she was reserving the ability to give

the matter further reflection at a later time. For instance, among the statements made by Judge

Fitzgerald at the time she admitted the Garlock Exhibits were the following:

- "The relevance and the weight to be accorded to this because the claimants still have to file claims against the trust and the trust will still have to prosecute all of this I will have to take under advisement." 6/9/10 Tr. at 195:15-19.

- "I'm treating them as relevant to ... Garlock's objection .... Whether that is material in a confirmation process is something that I have to assess later." *Id.* at 196:6-14.

- "You folks can brief this issue as part of your post-trial findings. I am reserving the issues with respect to any weight. I'm going to admit them for now. If that turns out to be incorrect, you can show me how in the post-trial submissions." *Id.* at 198:21-25.

- "Let me make a note that I will consider – reconsider this admission as part of the post-trial submissions." *Id.* at 199:19-21.

There was thus ample indication at the time of the confirmation hearing that the admission of the Garlock Exhibits as part of the final record was not assured because Judge Fitzgerald intended to revisit the issue before rendering her final decision. She obviously did just that thereafter and ultimately came to the conclusion that the Garlock Exhibits should not be admitted, for reasons set forth by her in the *RMO*. Mt. McKinley could not have been surprised by this result because it was an obvious possibility given the comments made at the June 9th hearing. Mt. McKinley has not cited to any authority for the proposition that a denial of admission of the Garlock Exhibits was a clear error of law or a manifest injustice. In the absence of such authority, Mt. McKinley's *Motion* as to this issue is really nothing more than a request that the Court second-guess an evidentiary ruling, something that is not a proper basis for a motion to reconsider.

Before moving on to the next issue, two additional points need to be made. First, it is apparent that Mt. McKinley's real argument, for which the non-admission of the Garlock Exhibits is serving as a mere proxy, is that it should have been allowed to take discovery during the confirmation process to explore the issue of possible fraud and collusion in connection with the Plan confirmation process. Without commenting on the merits of that argument, the Court would only note that it relates to the overall management of the case up to the filing of the *RMO*, not the sort

18

of discrete issue that can be adequately addressed in a motion for reconsideration.  As such, it is more appropriately a subject for appeal.

Second, the whole question of the non-admission of the Garlock Exhibits is something of a red herring.  Judge Fitzgerald could have allowed them to remain part of the record, but accord them no weight, leaving her to reach the same decision confirming the Plan.  As it is, she decided not to admit them, but Mt. McKinley conceded at oral argument on the *Motion* that the Garlock Exhibits can nevertheless be made part of the record in any appeal it may elect to take. 9/9/13 Tr., Doc. No. 9627, at 39:11 - 40:5.  Thus, even if the *Motion* is denied, Mt. McKinley will be in the same position for purposes of appeal as if the Garlock Exhibits had been admitted into evidence, and presumably, it can then raise the argument as to why it believes they demonstrate fraud and collusion in connection with the Plan process.

### (D)    Findings With Respect to Funding of Plan

Mt. McKinley next argues that confirmation of the Plan should be reconsidered because the agreements pursuant to which the trust to be created under the Plan is to be funded [9] have not been signed by the parties that are to be providing the funding.  According to Mt. McKinley, there is thus no enforceable legal obligation for anyone to fund the Trust, which impacts the feasability of the Plan.

---

[9]    The agreements in question are referred to as the PPG Trust Funding Agreement and the Corning Trust Funding Agreement.

The Plan Advocates acknowledge that the funding agreements in question have not been signed.  They contend, however, that in this type of plan it is customary to delay signing the agreements until a "closing" that will not take place until sometime after the Plan has been finally approved, probably after  appeal.  The Plan Advocates assure the Court that there is every  reason to assume that the agreements will be signed, and funding forthcoming, in due course, and that in any event, if an unforseen  hitch in funding does develop, the Plan will not be implemented. Mt. McKinley responds by pointing out that in cases with similar plans, the parties who are to provide funding at least have the obligation to sign the funding agreement at the appropriate time, something absent from the present case.

The Court does to a certain extent take Mt. McKinley's point.  While there is no reason to doubt the sincerity of the Plan Advocates when they say that they foresee no impediment to funding when the time comes for that to happen, it does seem to be a rather casual approach to merely rely on the willingness of the funding parties to sign the agreements in the future rather than to have them legally obligated in some manner to do that.

Despite its sympathy with Mt. McKinley on this point, however, the Court does not find it to be a sufficient reason to grant the *Motion*.  For one thing, this argument goes to the feasability of the Plan, and in fact Mt. McKinley uses that terminology in the *Motion*.  See *Motion* at ¶32.  The concept of feasability flows from *11 U.S.C. §1129(a)(11)*, which provides that one requirement of plan confirmation is that confirmation will not likely be followed by liquidation or the need for further  financial reorganization.  The Plan Advocates point out that at the June 2010 confirmation hearing the Debtor made a proffer of testimony regarding satisfaction of the various

20

*Section 1129* requirements, and Mt. McKinley responded by saying that it had no "1129 or basic

bankruptcy objections." 6/3/ 2010 Tr., Doc. No. 7823 at 71:9-17. Just as now, the funding

agreements at issue were known to be unsigned at that time. There is thus a good argument to be

made that Mt. McKinley has waived the feasability argument it is now making and Judge Fitzgerald

need not even have considered it in the first motion for reconsideration. She nevertheless did so,

rejecting Mt. McKinley's argument. The Court is not willing to give Mt. McKinley yet another bite

at this same apple.

Perhaps an even stronger reason for the Court's conclusion on this point is that Mt.

McKinley has simply not shown how it can be harmed by the unsigned agreements. Based on the

representations of the Plan Advocates, the Court fully expects that funding will never be an issue.

However, if it is, the result will be a failure of the Plan. As Counsel for the Plan Advocates rather

memorably put it at the hearing, if that were to happen Mt. McKinley should be "dancing in the

street" because its efforts all along have been directed at thwarting implementation of the Plan. The

Court thus finds that this point of the *Motion* is not a sufficient ground for reconsideration.

### (E)    *Express Conditions Precedent to Plan Preclude Confirmation*

In its final argument, Mt. McKinley points out that Section 8.1 of the Plan provides

as a "condition precedent to confirmation of the Plan" that certain findings and conclusions would

be included in the confirmation order. This provision of the Plan is then followed by a laundry list

of subparagraphs setting forth the required findings and conclusions. Mt. McKinley argues that the

Plan should not have been confirmed because the *RMO* does not include findings corresponding to

Sections 8.1.18 and 8.1.28 of the Plan.[10]   Mt. McKinley likens this to a failure of a condition

precedent in contract law, which it says should have led to a denial of the Plan.

The Plan Advocates acknowledge that there are no findings in the *RMO*

corresponding to Sections 8.1.18 and 8.1.28.  They argue that the absence of these findings,

however, does not require a denial of the Plan for a couple if reasons.  First, they note that these

findings were also not in the *Interim Opinion* circulated by Judge Fitzgerald, yet Mt. McKinley

made no objection related to that in its first motion for reconsideration.  Indeed, the first motion for

reconsideration filed by Mt. McKinley criticized the *Interim Opinion* for being replete with findings

not required for confirmation "as this Court acknowledged by not making certain of them (*e.g.,* Plan

§§8.1.18 and 8.1.28)."  Doc. No. 9420 at 15.  Second, they note that at the May 23, 2013 hearing

the subject of the absence of these findings was discussed and it was indicated by Judge Fitzgerald

that she would be making the findings required by Section 8.1 "as modified herein," to which Mt.

McKinley agreed.  5/23/2013 Tr., Doc. No. 9449 at 28:7-24.

---

[10]    Section 8.1.18 provides:

Suits against PPG for Claims or Demands relating to asbestos or asbestos-
containing products manufactured, distributed, or sold by the Debtor or its
predecessors or Affiliates are inextricably intertwined with suits against the Debtor.

Section 8.1.28 provides:

Suits against Corning for Claims or Demands relating to asbestos or asbestos-
containing products manufactured, distributed, or sold by the Debtor or its
predecessors or Affiliates are inextricably intertwined with suits against the Debtor.
This finding, however, shall not be binding and shall not have collateral estoppel
effect on the Corning Insurers in any coverage litigation regarding the insurance
coverage obligations of the Corning Insurers.

At the oral argument on the *Motion*, counsel for one of the Plan Advocates characterized Mt. McKinley's position on this point as something of a "gotcha" argument, because Mt. McKinley had previously argued against inclusion of the findings in the *RMO*, and now that they have succeeded they argue that the Plan can not be confirmed because the findings were not made. The Court is constrained to agree that this appears to be a fairly accurate characterization.

Clearly, Mt. McKinley made efforts to either remove or narrow any findings in the *RMO* corresponding to Sections 8.1.18 and 8.1.28 of the Plan. For example, in the *Interim Opinion* Judge Fitzgerald noted that Mt. McKinley's objections included an argument that "such findings [*i.e.*, §§8.1.18 and 8.1.28] are unnecessary to Confirmation and are not supported by the evidence." Doc. No. 9409 at 12. Judge Fitzgerald cites to Doc. No. 9406 to support this assertion, a "Reservation of Rights" filed by Mt. McKinley wherein it did indeed expressly state that the proposed findings as expressed in §§8.1.18 and 8.1.28 are "unnecessary" to confirmation. *See also, e.g.*, Mt. McKinley's first motion for reconsideration, Doc. No. 9420 at 3 (footnote 2), 15. This is of course directly contrary to the argument that Mt. McKinley is now making that the absence of those very findings from the *RMO* precludes confirmation of the Plan. It may even be that Mt. McKinley is judicially estopped from making its present argument, though the Court finds that it does not need to make that determination to decide the *Motion*.

In addition to the above, Mt. McKinley's argument is further undercut by the colloquy that occurred at the May 23, 2013 hearing, as quoted in the *Response* to the *Motion* filed by the Plan Advocates. From a cold reading of that transcript, it would certainly appear to the Court that the intent expressed at the hearing was that the exclusion of the "findings" of §§8.1.18 and

23

8.1.28 from the *RMO* was tantamount to a modification of §8.1, to which Mt. McKinley agreed.

5/23/2013 Tr., Doc. No. 9449, 28:7-24.

## *CONCLUSION*

For all of the reasons stated above, except with regard to clarification of the scope of the Injunction, the Court finds that Mt. McKinley has failed to meet the exacting standard of its burden of proof as to reconsideration of the *RMO*, the *Confirmation Order*, and the other related orders. The Court does not find that Mt. McKinley has met its burden of showing a clear error of law or manifest injustice. The arguments raised by Mt. McKinley are better characterized as disagreements with the conclusions reached by Judge Fitzgerald in the *RMO* and the *Confirmation Order*. The *Motion* will be granted in one limited part and denied in all other respects. An appropriate order follows.

Dated: November 12, 2013

_____
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case Administrator to serve:
     James Restivo, Esq.
     Tony Draper, Esq.
     Peter Lockwood, Esq.
     Justin T. Romano, Esq.
     Ed Harren, Esq.
     David Lampl, Esq.
     David McConigle, Esq.